UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA - LAFAYETTE DIVISION

| | |
|---|---|
| GOLDMAN SACHS BANK USA, | CIVIL CASE NO. 15-2018 |
| Plaintiff, | SECTION |
| v. | JUDGE |
| MICHEL B. MORENO, TIFFANY C. MORENO, MBM 2011 DOH GRANTOR RETAINED ANNUITY TRUST, TCM 2011 DOH GRANTOR RETAINED ANNUITY TRUST, MBM 2011 MGH GRANTOR RETAINED ANNUITY TRUST, TCM 2011 MGH GRANTOR RETAINED ANNUITY TRUST, MORENO PROPERTIES TWO, L.L.C., AND NICHOLSON ESTATES, L.L.C., | MAGISTRATE |
| Defendants. | |

### VERIFIED COMPLAINT TO FORECLOSE BY EXECUTORY PROCESS, WITH BENEFIT OF APPRAISAL

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Goldman Sachs Bank USA, who files this Verified Complaint to Foreclose by Executory Process, (this "Complaint"), and in support thereof shows as follows:

#### PARTIES

1. The Plaintiff is Goldman Sachs Bank USA, a New York state-chartered bank with its principal place of business in New York (the "Plaintiff" or the "Mortgagee").

2. Made Defendants herein are (collectively referred to as the "Defendants"):

{N2996345.4}

(a) Michel B. Moreno ("Mr. Moreno"), who is over the age of majority and residing in Harris County, Texas, and is therefore considered a citizen of the State of Texas;

(b) Tiffany C. Moreno ("Ms. Moreno"), who is over the age of majority and residing in Harris County, Texas, and is therefore considered a citizen of the State of Texas;

(c) MBM 2011 DOH Grantor Retained Annuity Trust ("MBM-DOH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, who is over the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (*Navarro Savings Association v. Lee*, 446 U.S. 458 (1980));

(d) TCM 2011 DOH Grantor Retained Annuity Trust ("TCM-DOH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, who is over the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (*Navarro Savings Association v. Lee*, 446 U.S. 458 (1980));

(e) MBM 2011 MGH Grantor Retained Annuity Trust ("MBM-MGH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, a person over the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (*Navarro Savings Association v. Lee*, 446 U.S. 458 (1980));

(f) TCM 2011 MGH Grantor Retained Annuity Trust ("TCM-MGH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, a person over

the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (*Navarro Savings Association v. Lee*, 446 U.S. 458 (1980));

(g) Moreno Properties Two, L.L.C. ("Moreno Properties Two"), is a Louisiana limited liability company with its sole member Moreno Properties, L.L.C., a Louisiana limited liability company with its members consisting of Mr. Moreno and Ms. Moreno, and is therefore considered a citizen of the State of Texas; and

(h) Nicholson Estates, L.L.C. ("Nicholson Estates"), is a Louisiana limited liability company, with its sole member consisting of Moreno Properties, L.L.C., a Louisiana limited liability company with its members consisting of Mr. Moreno and Ms. Moreno, and is therefore considered a citizen of the State of Texas.

## JURISDICTION

3. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, excluding interest and costs.

4. The Plaintiff is considered a citizen of New York because it is a New York state-chartered bank with its principal place of business located in New York. None of the Defendants are considered citizens of the State of New York. Accordingly, there is complete diversity of citizenship between Plaintiff and Defendants.

5. This Court has personal jurisdiction over Defendants because they are either considered citizens of Louisiana or regularly transact business in Louisiana. Further, this action arises from a promissory note that was made by the Borrowers (as defined hereafter in Paragraph 7) in Plaintiff's favor and secured by, among other things, a first, second, and third mortgage over immovable property located in Iberia Parish, Louisiana.

{N2996345.4}

## VENUE

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the immovable property at issue in this matter is in this district.

## FACTS AND ALLEGATIONS

**A. The Note and the Loan Agreement**

7. Mr. Moreno, Ms. Moreno, MBM-DOH, TCM-DOH, MBM-MGH, TCM-TGH and Moreno Properties Two (the "Borrowers"), executed a Consolidated, Amended and Restated Note in favor of the Plaintiff (the "Note"), dated October 11, 2013, in the original principal amount of $52,370,000.00. The original Note is attached hereto and made a part of hereof as **Exhibit 1**.

8. The Note provides that it is issued pursuant to, and is entitled to the benefits of, that certain Amended and Restated Loan Agreement, which amends and restates previous loan agreements, dated October 11, 2013 (the "October 11, 2013 Loan Agreement"). A copy of the October 11, 2013 Loan Agreement is attached hereto and made a part hereof as **Exhibit 2**. The October 11, 2013 Loan Agreement was amended and modified pursuant to that First Amended and Restated Loan Agreement dated June 30, 2014 (the "June 30, 2014 Loan Amendment") (collectively the "Loan Agreement"). A copy of the June 30, 2014 Loan Amendment is attached hereto and made a part hereof as **Exhibit 3**.

9. Pursuant to the Note and the Loan Agreement, before default, interest accrues on the Note at a per annum rate equal to the sum of: (i) LIBOR for the then-current LIBOR Reset Period (as defined in the Loan Agreement) plus (ii) a rate equal to 8% per annum.

10. After default, the principal balance of all accrued and unpaid interest due on the Note and all other obligations, interest, fees, charges and expenses of the Borrowers to the Plaintiff arising in connection with the Loan Documents (the "Obligations"), shall bear an

interest rate that is 15% per annum in excess of the interest rate otherwise applicable to such Obligations from time to time until paid (the "Default Interest"), to the extent permitted by applicable law. Any interest payable pursuant to the foregoing proviso which is not paid when due may be added to the outstanding principal sum of the Loans, as defined in the Loan Agreement, and itself bear interest accordingly to the extent permitted by applicable law.

11. The Note also provides that the Borrowers shall pay all of Plaintiff's costs and expenses including, without limitation, all reasonable attorneys' fees and expenses incurred in connection with the enforcement of or preservation of rights under the Note, Loan Agreement, or other loan documents (collectively the "Loan Documents").

12. The Note is in default for, among other things, failing to pay the outstanding amounts due under the Note on the stated "Maturity Date", July 11, 2014.

13. Upon default, the Plaintiff exercised its right to accelerate the Maturity Date, making the Obligations under the Loan Documents due and exigible.

14. Despite amicable demand, the total outstanding amount due under the Loan Documents is $58,437,735.51, comprised of the following, as of June 15, 2015:

(a) Principal in the amount of $47,401,003.16; and

(b) Accrued interest, in the amount of $11,464,099.79.

After June 15, 2015, interest will continue to accrue on the principal balance due, as described in the Loan Documents, until paid. In addition to the foregoing, the Plaintiff is entitled to its reasonable attorneys' fees in collecting the amounts due and owing under the Loan Documents and all costs of these proceedings including any additional sums authorized by the Loan Documents that may become due to the Plaintiff until the U.S. Marshall's sale.

    **B.**    **The Mortgages on the Nicholson Estates Property and the Port Road Property**

15. The Loan Documents are secured by, among other things, a first mortgage over the Nicholson Estates Property (as defined hereafter in Paragraph 19) and a first, second, and third mortgage on the Port Road Property (as defined hereafter in Paragraph 26).

    **i.**    **The First Mortgage on the Nicholson Estates Property**

16. The first mortgage on the Nicholson Estates Property, is evidenced by, inter alia, that certain Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement (the "Nicholson Estates Mortgage"), encumbering certain immovable property located in East Baton Rouge Parish, Louisiana, dated October 11, 2013. The Nicholson Estates Mortgage was passed before a notary public and two witnesses, and properly recorded on October 21, 2013, in the records of East Baton Rouge Parish, Louisiana, at Orig. 968, Bndl. 12537. A certified copy of the Nicholson Estates Mortgage is attached hereto as **Exhibit 4**.

17. The Nicholson Estates Mortgage was executed by Nicholson Estates (the "Nicholson Mortgagor"), through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a certified resolution of its Manager, attached to the Nicholson Mortgage. *See* Exhibit 4.

18. The Nicholson Estates Mortgage was granted to secure the full and prompt payment of the Note, the Loan Agreement and Loan Documents, together with interest, attorneys' fees, costs of these proceedings, payment of insurance premiums, taxes, keeper's fees, and the performance of all other obligations under the Nicholson Estate Mortgage (the "Nicholson Indebtedness").

{N2996345.4}

19. Pursuant to the Nicholson Estates Mortgage, in order to secure the prompt and punctual payment and satisfaction of the Nicholson Indebtedness, the Nicholson Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Nicholson Mortgagor's present and future rights, title and interest in and to the certain immovable property, located in Baton Rouge, Louisiana, a complete legal description of which is attached hereto as **Exhibit 5** (the "Nicholson Estates Property").

20. A certified copy of the corresponding UCC-1 Financing Statement (the "Nicholson Estates UCC Financing Statement"), filed and recorded in East Baton Rouge Parish at UCC Number 17-1395914, in connection with the security interest granted in the personal and movable property of the Nicholson Estates Property is attached hereto as **Exhibit 6**. The property described in the Nicholson Estates UCC Financing Statement is included in the Nicholson Estates Property description. *See* Exhibit 5.

21. The Nicholson Mortgagor specifically acknowledged that the Nicholson Estates Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Documents made by the Borrowers and shall be cross-collateralized with the additional properties identified in the Nicholson Estates Mortgage and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan.

    ii.    **The First Mortgage on the Port Road Property**

22. The first mortgage on the Port Road Property was executed by Moreno Properties Two in favor of Regions Banks evidenced by, inter alia, that certain Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement (the "Original First Mortgage"), encumbering certain immovable property located in Iberia Parish, Louisiana, dated September 15, 2010. The Original First Mortgage was passed before a notary public and two witnesses, and properly recorded on September 15, 2010, in the records of Iberia Parish,

{N2996345.4}

Louisiana, at Book 1465, Page 63 under File No. 2010-00010271. A certified copy of the Original First Mortgage is attached hereto as **Exhibit 7**.

23. Moreno Properties Two (the "Moreno Mortgagor"), executed the Original First Mortgage through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a written consent of the member, a certified copy of which is attached to the Original First Mortgage (*See* Exhibit 7).

24. The Original First Mortgage was assigned to Plaintiff pursuant to that certain Assignment of Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement, dated October 11, 2013, executed in the presence of a notary and two witnesses, and properly recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 174 under File No. 2013-00011972 (the "Assignment of the Original First Mortgage"). A certified copy of the Assignment of the First Mortgage is attached hereto as **Exhibit 8**.

25. The Original First Mortgage was later amended and modified by that certain Mortgage Modification to Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement, recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 290 under File No. 2013-00011974 (the "First Mortgage Modification"). The First Mortgage Modification, a certified copy of which is attached hereto as **Exhibit 9**, modified the terms to provide, among other things, that the Port Road Property shall be collateral for up to $40,000,000 of the loan made to the Borrowers as evidenced by the Note (the "First Port Road Indebtedness"). The Mortgage Modification further provides, among other things, that the Moreno Mortgagor specifically acknowledged that the Port Road Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Document made by the Borrowers and shall be cross-collateralized with the additional properties identified in the First Mortgage

{N2996345.4}

Modification and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan. The Original First Mortgage, the Assignment of the Original First Mortgage, and the First Mortgage Modification shall collectively be referred to as the "First Mortgage").

26. Pursuant to the First Mortgage, in order to secure the prompt and punctual payment and satisfaction of the First Port Road Indebtedness, the Moreno Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Moreno Mortgagor's present and future rights, title and interest in and to the certain immovable property, located in New Iberia, Louisiana, a complete legal description of which is as attached hereto as **Exhibit 10** (the "Port Road Property").

27. Certified copies of the corresponding UCC-1 Financing Statements and UCC-3 Financing Statements (the "The Port Road UCC Financing Statements"), filed and recorded in Iberia Parish at File Numbers: 2013-00004005, 2013-00004004, 2013-00003979, 2013-00003978, 2013-00003977, 2013-00003980, in connection with the security interest granted in the personal and movable property of the Port Road Property on the First, Second, and Third Mortgages, as defined herein, are collectively attached as **Exhibit 11**. The property described in the Port Road UCC Financing Statements is included in the Port Road Property description. *See* Exhibit 10.

### iii. The Second Mortgage on the Port Road Property

28. The second mortgage on the Port Road Property was executed by Moreno Properties Two in favor of the Plaintiff as evidenced by that certain Second Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement (the "Original Second Mortgage"), encumbering certain immovable property located in Iberia Parish, Louisiana, dated October 10, 2013. The Original

{N2996345.4}

Second Mortgage was passed before a notary public and two witnesses, and properly recorded on October 22, 2013, in the records of Iberia Parish, Louisiana, at Book 1579, Page 178 under File No. 2013-00011973. A certified copy of the Original Second Mortgage is attached hereto as **Exhibit 12**.

29. The Original Second Mortgage was executed by Moreno Properties Two through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a written consent of the member, a certified copy of which is attached to the Original Second Mortgage (*See* Exhibit 12).

30. The Original Second Mortgage was later amended and modified by that certain Mortgage Modification to Second Lien Mortgage, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement, recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 408 under File No. 2013-00011975 (the "Second Mortgage Modification"). The Second Mortgage Modification, a certified copy of which is attached hereto as **Exhibit 13**, modified the terms to provide, among other things, that the Port Road Property shall be collateral for up to $40,000,000 of the loan made to the Borrowers as evidenced by the Note (the "Second Port Road Indebtedness"). The Original Second Mortgage and the Second Mortgage Modification shall collectively be referred to as the "Second Mortgage."

31. Pursuant to the Second Mortgage, in order to secure the prompt and punctual payment and satisfaction of the Second Port Road Indebtedness, the Moreno Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Moreno Mortgagor's present and future rights, title and interest in the above-described Port Road Property. The Moreno Mortgagor specifically acknowledged that the Port Road

Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Document made by the Borrowers and shall be cross-collateralized with the additional properties identified in the Original Second Mortgage and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan.

    iv.    **The Third Mortgage on the Port Road Property**

32. The third mortgage on the Port Road Property is evidenced by, inter alia, that certain Third Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement (the "Original Third Mortgage"), encumbering certain immovable property located in Iberia Parish, Louisiana, dated October 11, 2013. The Original Third Mortgage provides that the Port Road Property shall be collateral for up to $12,370,000, plus all interest, attorneys' fees, insurance premiums, municipal charges, taxes, costs and expenses, of the loan made to the Borrowers as evidenced by the Note (the "Third Port Road Indebtedness"). The Original Third Mortgage was passed before a notary public and two witnesses, and properly recorded on October 22, 2013, in the records of Iberia Parish, Louisiana, at Book 1579, Page 416 under File No. 2013-00011976. A certified copy of the Original Third Mortgage is attached hereto as **Exhibit 14**.

33. The Original Third Mortgage was executed by Moreno Properties Two, through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a written consent of the member, a certified copy of which is attached to the Original Third Mortgage (*See* Exhibit 14).

34. The Original Third Mortgage was assigned by MBM-MGH and TCM-MGH, through their duly authorized representative, the trustee, Dalis Moreno Waguespack, to Plaintiff pursuant to that certain Assignment of Third Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement,

{N2996345.4}

dated October 11, 2013, executed in the presence of a notary and two witnesses, and properly recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 528 under File No. 2013-00011977 (the "Assignment of the Original Third Mortgage"). A certified copy of the Assignment of the Original Third Mortgage is attached hereto as **Exhibit 15**. The Original Third Mortgage and the Assignment of the Original Third Mortgage, shall collectively be referred to as the "Third Mortgage."

35. Pursuant to the Third Mortgage, in order to secure the prompt and punctual payment and satisfaction of the Third Port Road Indebtedness, the Moreno Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Trust Mortgagors' present and future rights, title and interest in the above-described Port Road Property. The Moreno Mortgagor specifically acknowledged that the Port Road Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Document made by the Borrowers and shall be cross-collateralized with the additional properties identified in the Original Third Mortgage and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan.

   v.  **The Mortgages on the Nicholson Estates Property and the Port Road Property and the Confession of Judgment**

36. The Nicholson Indebtedness, the First Port Road Indebtedness, the Second Port Road Indebtedness, and the Third Port Road Indebtedness shall collectively be referred to as the "Indebtedness."

37. Pursuant to the Nicholson Estates Mortgage and each of the Port Road Mortgages (collectively the "Mortgages"), for the purposes of foreclosure under Louisiana executory process procedures, (the Nicholson Mortgagor and the Moreno Mortgagor shall collectively be referred to as the "Mortgagors"), the Mortgagors confessed judgment up to the full amount of the

{N2996345.4}

Indebtedness in favor of the Mortgagee. *See* Exhibit 4, p. 108, Exhibit 7, p. 9, Exhibit 9, p. 113, Exhibit 12, p. 107, Exhibit 14 p. 107). The Mortgagors also waived the right to the notice of seizure and all other benefits provided under articles 2331, 2722, 2723 of the Louisiana Code of Civil Procedure.

38. Pursuant to each of the Mortgages, the Mortgagors consented and agreed that, in the event the Mortgagee elects to commence appropriate Louisiana foreclosure proceedings under the Mortgages, the Mortgagee may cause the Nicholson Estates Property and the Port Road Property to be immediately seized and sold, under ordinary or executory process, in accordance with applicable Louisiana law, without appraisement, which was expressly waived, to the highest bidder for cash, and without the necessity of making additional demand upon or notifying the Mortgagors or placing the Mortgagors in default, all of which were expressly waived in the Mortgages.

39. Pursuant to each of the Mortgages, the Mortgagors agreed that, should any or all of the Nicholson Estates Property or the Port Road Property be seized as an incident to an action for recognition or enforcement of the Mortgage, pursuant to the provisions of the Louisiana Revised Statutes, Title 9, Section 5136, the court issuing any such order shall, if requested by the Mortgagee, appoint the Mortgagee, or any agent designated by the Mortgagee, or any person or entity named by Mortgagee at the time such seizure is required, or at any time thereafter, as keeper of the Mortgaged Property as provided under La. R.S. 9:5136 -5140.2 (the "<u>Keeper</u>"). The Mortgagors further agreed to pay the Keeper.

40. Pursuant to each of the Mortgages, the Mortgagors agreed that, should it become necessary for the Mortgagee to foreclose under the Mortgages, all declarations of fact, which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person

{N2996345.4}

declaring such facts to lie within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. 9:3509.1, La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, where applicable.

41. The Mortgagors further agreed that all reasonable costs, expenses and liabilities of every character incurred by the Mortgagee in connection with managing, operating and maintaining the Nicholson Estates Property and the Port Road Property, respectively, shall constitute an obligation owing by the Mortgagors to the Mortgagee, and that all such costs, expenses and liabilities shall constitute a portion of the Indebtedness secured by the Mortgages.

## RELIEF SOUGHT

42. The Plaintiff seeks an Order for Executory Process, wherein a Writ of Seizure and Sale is issued and, thereafter, the U.S. Marshall of the Western District of Louisiana seizes and sells, at public auction, with benefit of appraisement, to the highest bidder for cash, the Port Road Property in order to pay and satisfy the Indebtedness.

43. The Plaintiff further seeks an Order for Executory Process, wherein a Writ of Seizure and Sale be issued and, thereafter pursuant to the appropriate order and/or instruction, the U.S. Marshall of the Middle District of Louisiana seizes and sells, at public auction, with benefit of appraisement, to the highest bidder for cash, the Nicholson Estates Property in order to pay and satisfy the Indebtedness.

44. The Plaintiff reserves its right to appoint Keepers for the Nicholson Estates Property and the Port Road Property pursuant to the Mortgages and La. R.S. 9:5131 through 5135 and 9:5136 through 5140.2, with full powers of administration, including but not limited to the power to collect and receive the Leases, Rents and Profits pending the sale of the Nicholson Estates Property and the Port Road Property in order to pay and satisfy the Indebtedness.

45. The Plaintiff reserves its rights to collect any deficiency against the Borrowers and any co-maker or guarantor of the Note should the proceeds of any judicial sale be insufficient to satisfy the amounts due and owing under the Note in full.

46. The Plaintiff reserves its right to collect, enforce, or exercise any of its rights and remedies under the remaining collateral as security for the Loan Documents.

WHEREFORE, Goldman Sachs Bank USA, prays for the issuance of an Order of Executory Process, and that a writ of seizure and sale be issued directing the U.S. Marshall for the Western District of Louisiana to, after all due advertisements, delays, requisites and other formalities, sell at public auction, with benefit of appraisement, to the highest bidder for cash the above-described Port Road Property to pay and satisfy the Plaintiff's claim, in preference and priority to all others, in the following amounts:

a) Principal in the amount of $47,401,003.16;

b) Interest, accrued on the principal amount due and owing, in the amount of $11,464,099.79;

c) After June 15, 2015, interest will continue to accrue on the principal balance due, as described in the Loan Documents, until paid;

d) Reasonable attorneys' fees for collecting the amounts due and owing under the Loan Documents;

e) All costs of these proceedings and for any additional sums authorized by the Note and the Mortgages that may become due to the Plaintiff until the U.S. Marshall's sale.

Goldman Sachs Bank USA, further prays for the issuance of an Order of Executory Process, and that a writ of seizure and sale, and any other applicable order and/or instruction, be issued directing the U.S. Marshall for the Middle District of Louisiana to, after all due advertisements, delays, requisites and other formalities, sell at public auction, with benefit of appraisement, to the highest bidder for cash the above-described Nicholson Estates Property to

{N2996345.4}

pay and satisfy the Plaintiff's claim, in preference and priority to all others, in the following amounts:

a) Principal in the amount of $47,401,003.16;

b) Interest, accrued on the principal amount due and owing, in the amount of $11,464,099.79;

c) After June 15, 2015, interest will continue to accrue on the principal balance due, as described in the Loan Documents, until paid;

d) Reasonable attorneys' fees for collecting the amounts due and owing under the Note, and the Mortgages;

e) All costs of these proceedings and for any additional sums authorized by the Note and the Mortgages that may become due to the Plaintiff until the U.S. Marshall's sale.

Goldman Sachs Bank USA, further prays that it be permitted to bid the aforesaid amounts as a credit bid at the U.S. Marshall's sales of the Nicholson Estates Property and the Port Road Property and that out of the proceeds of the sales, Plaintiff be paid the amount of its claim by preference and priority over all other persons.

Goldman Sachs Bank USA, further prays for a reservation of its rights, among other things, to (a) to exercise any other remedies provided for in the Mortgages or other Loan Documents related to the Note or Loan Agreement, and (b) collect any deficiency against the Borrowers and any co-maker or guarantors of the Loan Documents should the proceeds of any judicial sale be insufficient to satisfy the Plaintiff's claim in full.

Goldman Sachs Bank USA, further prays for a reservation of its rights, among other things, to appoint Keepers for the Nicholson Estates Property and the Port Road Property pursuant to the Mortgages and La. R.S. 9:5131 through 5135 and 9:5136 through 5140.2, with full powers of administration, including but not limited to the power to collect and receive the Leases, Rents and Profits (as defined in Exhibits 5 and 10), pending the sale of the Nicholson

Estates Property and the Port Road Property in order to pay and satisfy the amounts due and owing under the Loan Documents.

Finally, Goldman Sachs Bank USA, prays for all orders and decrees necessary in this matter and for any other general or equitable relief to which it may be entitled.

Respectfully submitted

/s/ Laura F. Ashley
R. PATRICK VANCE (#13008)
LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Ave., 49th Floor
New Orleans, LA  70131-5100
Telephone:  504-582-8000
Fax:  504-582-8011

and

CARMEN M. RODRIGUEZ (#22573)
Jones Walker LLP
Suite 1600
600 Jefferson St
Lafayette, LA 70501
Telephone: 337-593-7600
Fax: 337-593-7601
carmenrodriguez@joneswalker.com
**Attorneys for Goldman Sachs Bank USA**

{N2996345.4}