RECEIVED

MAY 2 4 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

GOLDMAN SACHS BANK USA

VERSUS

MICHEL B MORENO, ET AL.

CIVIL ACTION NO. 15-2018

JUDGE DOHERTY

MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

Currently pending before the Court is a "Motion to Compel Arbitration" [Doc. 32], filed by defendants Moreno Properties Two, L.L.C. ("Properties Two") and Nicholson Estates, L.L.C. ("Nicholson"). For the following reasons, the motion is DENIED.

I.      **Factual and Procedural Background**

Plaintiff Goldman Sachs Bank USA ("Goldman Sachs") is the holder of a Consolidated, Amended and Restated Note ("the note") executed by defendants, Michel B. Moreno, Tiffany C. Moreno, MBM 2011 DOH Grantor Retained Annuity Trust, TCM 2011 DOH Grantor Retained Annuity Trust, MBM 2011 MGH Grantor Retained Annuity Trust, TCM 2011 MGH Grantor Retained Annuity Trust, and Moreno Properties Two, L.L.C. (collectively "borrowers").[1] The note was executed in connection with a loan made by plaintiff to defendants in the amount of $52,370,000.00.  Defendants have defaulted on the note by failing to repay the loan on July 11, 2014.[2] The loan is secured by a first mortgage and a UCC-1 Financing Statement on "the Nicholson

---

[1]Doc. 1-3

[2]Doc. 1 at ¶ 12; Doc. 1-5, p. 2

Page 1 of  16

Estates Property," and a first, second, and third mortgage, and UCC-1 and UCC-3 Financing Statements on "the Port Road Property."[3] All of the mortgages contain confessions of judgment.

On July 8, 2015, plaintiff filed a "Verified Complaint to Foreclose By Executory Process, With Benefit of Appraisal" in this Court. Pursuant to its Complaint, plaintiff sought "an Order for Executory Process" pursuant to Louisiana law, asking that a writ of seizure and sale issue for the foregoing properties. On September 15, 2015, this Court issued the requested writ and appointed a keeper of the mortgaged properties.[4] Three days later, defendants Properties Two and Nicholson filed a motion to compel arbitration and stay these proceedings.[5] On September 21, 2015, the Court stayed execution of the writ of seizure and sale and order appointing a keeper, pending disposition of the motion to compel arbitration.[6]

Pursuant to the motion to compel arbitration, Properties Two and Nicholson seek "an order compelling arbitration of the instant proceeding," asserting "[b]oth the Loan Agreement and the Mortgage mandate the parties resolve all disputes arising under either the Loan Agreement or Mortgages by arbitration."[7] The Court now finds, for the reasons that follow, that the motion to compel arbitration will be denied.

---

[3]The Nicholson Estates Property is immovable property located in East Baton Rouge Parish, Louisiana. The Port Road Property is immovable property located in Iberia Parish, Louisiana.

[4]Doc. Nos. 29-31

[5]Doc. 32. No defendant has been served in this matter, because under Louisiana's executory process regime, service is not made upon a defendant until after the writ of seizure and sale issues and the encumbered property has been seized. La. Code Civ. P. art. 2721. Nevertheless, defendants Properties Two and Nicholson have made appearances in this matter. No other defendant has appeared to date.

[6]Doc. 34

[7]Doc. 32, pp. 1-2

## II.     Applicable Law

In an action to enforce an arbitration provision of a contract involving interstate commerce, enforcement of the arbitration clause in federal court is controlled by the Federal Arbitration Act, 9 U.S.C.A. §§ 1-14, rather than by state law.[8] The contracts in this matter involve interstate commerce.[9] The Supreme Court has enunciated certain general principles applicable to determining arbitrability: (1) arbitration is a matter of contract and a party can only be required to submit to arbitration those disputes which he has agreed to submit to arbitration; (2) the question of whether the parties agreed to arbitrate the issue of arbitrability itself is a question for the court, unless the parties clearly and unmistakable provide otherwise; (3) in determining whether the parties have agreed to submit a particular grievance to arbitration, the court is not to rule on the potential merits of the underlying claims; and (4) where the contract contains an arbitration clause, there is a presumption of arbitrability. In light of the presumption of arbitrability, any ambiguities are resolved in favor of arbitration.[10]

---

[8]*Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22, 25 (5th Cir. 1980) (where contract entails interstate commerce, enforcement of arbitration clause is governed by United States Arbitration Act, even in diversity jurisdiction cases); *Tittle v. Enron*, 463 F.3d 410, 418, n. 7 (5th Cir. 2006).

[9]*See e.g. Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57-58 (2003)(Debt-restructuring agreements executed in Alabama by Alabama residents were contracts involving interstate commerce under the Federal Arbitration Act, given that one of the parties had engaged in business throughout the southeastern United States using loans obtained in the debt-restructuring agreements, the restructured debt was secured by inventory assembled from out-of-state parts and raw materials, and given the broad impact of commercial lending on the national economy).

[10]*Tittle* at 418.

When considering a motion to compel arbitration under the FAA, the court employs a two step analysis: first, the court must determine whether the parties agreed to arbitrate the dispute in question; second, the court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.[11] Because no party has argued external legal constraints have foreclosed the arbitration of the claims at issue in this case, this Court need only conduct the first step of the analysis to resolve the arbitrability question. The first step of the analysis consists of two separate determinations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the parties' arbitration agreement.[12] No party in this matter challenges the validity of the arbitration clauses contained in the documents, and therefore the only issue before this Court is whether the dispute falls within the scope of the arbitration clauses. To determine the scope of the arbitration clauses, courts apply the contract law of the particular state that governs the agreement.[13] All parties have analyzed the scope of the arbitration clause pursuant to Louisiana law.[14]

---

[11]*Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996); *Tittle* at 418.

[12]*Webb* at 258; *Tittle* at 418.

[13]*Tittle* at 419.

[14]*See* Doc. 32-1, pp. 7-12; Doc. 40, pp. 12-17. While there is some question as to the body of law governing this matter, the Court will nevertheless apply Louisiana law, as this matter involves the enforcement of liens against property located in Louisiana, and plaintiff's suit seeks to utilize a unique Louisiana remedy. The Court additionally notes a party has "an obligation to call the applicability of another state's law to the court's attention in time to be properly considered." *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67. 74 (5th Cir. 1987); *see also American Intern. Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540 (5th Cir. 1987)(it is well established parties are generally bound by the theory of law they argue in district court, absent some manifest injustice; manifest injustice exists only in extreme circumstances and requires more than a mere showing that the application of another state's law would produce a different result); *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 432-33 (5th Cir. 1996)(contracts stating the choice-of-law provisions apply to the "agreement and its enforcement" are narrow and are to be construed narrowly).

### III.    The Loan Documents

### A.    The Loan Agreement

The Loan Agreement in this matter provides in pertinent part as follows:

ARTICLE II

THE LOAN

    2.1    <u>Loan</u>. . . . [T]he Lender agrees, on the terms and conditions set forth in this Agreement, to make a term loan in the aggregate principal amount up to Fifty-Two Million Three Hundred Seventy Thousand Dollars ($52,370,000) . . . to the Borrowers. . . .

    . . . .

On the Maturity Date the Borrowers shall repay in full in cash the then outstanding balance of the Loan. The obligation of each Borrower to repay the principal amount of the Loan, and any and all interest which accrues thereon, shall be evidenced [in] an amended, restated and consolidated promissory note. . . .

    . . . .

ARTICLE VIII

ACCELERATION, WAIVERS, AMENDMENTS AND REMEDIES

    7.2    <u>Other Remedies</u>. Upon the occurrence and during the continuance of an Event of Default, the Lender . . . may proceed to protect and enforce the Lender's rights by suit in equity, action of law and/or other appropriate proceeding either for specific performance of any covenant or condition contained in this Agreement, any other Loan Document or in any instrument or document delivered to the Lender pursuant hereto or thereto . . . .

    . . . .

ARTICLE VIII

GENERAL PROVISIONS

    . . . .

Page 5 of  16

8.9     BINDING ARBITRATION

(a)     THE PARTIES HERETO HEREBY WAIVE ALL RIGHTS
TO A COURT TRIAL OR TRIAL BY JURY WITH RESPECT TO ANY DISPUTE,
CONTROVERSY OR CLAIM UNDER THIS AGREEMENT AND THE
BORROWERS AGREE TO SETTLE BY ARBITRATION ANY CONTROVERSY
BETWEEN THE BORROWERS AND THE LENDER OR ITS AFFILIATES
ARISING OUT OF OR RELATING TO THIS AGREEMENT. . . .

. . . .

(d)     THE BORROWERS AND THE LENDER HEREBY
FURTHER AGREE AS FOLLOWS:

EACH OF THE BORROWERS AND THE LENDER IS EACH GIVING UP
THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO
A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULE OF THE
ARBITRATION FORUM IN WHICH A CLAIM IS FILED.[15]

**B.     The Note**

The note provides in pertinent part as follows:

This Note is issued pursuant to, and is entitled to the benefits of, the Loan
Agreement. . . . This Note is secured pursuant to the terms of the Loan Agreement
and certain other Loan Documents and reference is made thereto for a statement of
the terms and provisions thereof.

. . . .

If any payment . . . is not made when due hereunder . . ., or if any other Event
of Default shall occur for any reason, . . . then and in any such event, in addition to
all rights and remedies of the Lender under the Loan Agreement or any other Loan
Document, applicable law or otherwise, all such rights and remedies being
cumulative and enforceable alternatively, successively and concurrently, the Lender

---

[15]Doc. 1-4, pp. 7, 8, 16, 17 (capitalization in original). The Loan Agreement was amended on
June 30, 2014, by a document entitled, "First Amendment to Amended and Restated Loan Agreement."
Doc. 1-5. The amendment recognizes the borrowers failed to repay the loan on April 11, 2014 as required
under the terms of the Loan Agreement, thereby resulting in an Event of Default. *Id.* at p. 2. The
amendment further memorializes the parties' forbearance agreement, whereby the lender would refrain
from exercising its enforcement rights and extend the maturity date of the loan through July 11, 2014. *Id.*
The amendment contains an incorporation clause. *Id.* at 4

may, at its option, declare any and all of the Borrower's obligations . . . to be due and payable. . . .

[Doc. 1-3, p. 2]

### C.     The Mortgages

The Mortgages provide in pertinent part as follows:

> **WHEREAS,** Mortgagor acknowledges and agrees to be bound by the terms and conditions of the Loan Agreement as they apply to "Borrowers" as defined therein, to the extent applicable hereunder. . . .

> . . . .

ARTICLE 3

<u>DEFAULT AND FORECLOSURE</u>

Section 3.1 <u>Remedies</u>. If an Event of Default exists and is continuing under the Loan Agreement . . . Mortgagee may, at Mortgagee's election, take such action permitted at law or in equity, without notice or demand . . ., as it deems advisable to protect and enforce its rights against Mortgagor and to the Property, including but not limited to, any or all of the following rights, remedies and recourses each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in it its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

> . . . .

(d)   <u>Foreclosure and Sale</u>.   (i) Institute proceedings for the complete foreclosure of this Mortgage, by exercise of the JUDICIAL FORECLOSURE or otherwise, in which case the Property may be sold for cash or credit. . . .

> . . . .

(f) <u>Other</u>. Exercise all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity. . . .

> . . . .

Section 3.3 <u>Remedies Cumulative, Concurrent and Nonexclusive</u>. Mortgagee shall have all rights, remedies and recourses granted in the Loan Documents and

available at law or equity (including the UCC), which rights (a) shall be cumulative and concurrent and shall be in addition to every other remedy so provided or permitted, (b) may be pursued separately, successively or concurrently against Mortgagor, or against the Property, or against any one or more of them, at the sole discretion of Mortgagee, (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be nonexclusive. . . .

. . . .

ARTICLE 7

MISCELLANEOUS

. . . .

Section 7.12 Governing Law. THIS MORTGAGE SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED. . . . ALL OTHER PROVISIONS OF THIS SUPPLEMENT AND THE RIGHTS AND OBLIGATIONS OF MORTGAGOR AND LENDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.

. . . .

Section 7.16 Binding Arbitration. Mortgagor agrees to settle all claims relating to this Mortgage by arbitration and agrees to be bound by the terms of the [sic] Section 8.9 of the Loan Agreement which is hereby incorporated by reference.

. . . .

Section 7.23 Multiple Exercise of Remedies. To the extent permitted by law, Mortgagor specifically consents and agrees that Mortgagee may exercise rights and remedies hereunder and under the other Loan Documents separately or concurrently and in any order that Mortgagee may deem appropriate.[16]

---

[16]Doc. 1-6, pp. 7, 15, 16, 17, 36, 37, 38; *see also* Doc. 1-16, pp. 5, 14, 15-16, 35, 37; Doc. 1-19, pp. 5, 14, 15, 16, 35, 37. The Court need not address the terms of the original Port Road mortgage, as those terms were superceded and are controlled by the terms of the second and third mortgages. Doc. 1-12, p. 3; Doc. 1-18, p. 5.

The Mortgages additionally contain attachments identified as Exhibit B and entitled, "Special Provisions for the State of Louisiana," which read in pertinent part:

> 1. **Principles of Construction**. In the event of any inconsistencies between the terms and conditions of this Exhibit B and the terms and conditions of this Mortgage, the terms and conditions of this Exhibit B shall control and be binding.
>
> 2. **Louisiana Remedies**. In addition to and not in lieu or limitation of its other remedies set out in Article 3 of this Mortgage, if an Event of Default occurs under this Mortgage, at any time thereafter, Mortgagee, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights and remedies provided by law:
>
> . . . .
>
> (b) Seizure and Sale of Property. In the event that the Mortgagee elects to commence appropriate Louisiana foreclosure proceedings under this Mortgage, Mortgagee may cause the Property, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law. . . .[17]

## IV. Analysis

In this matter, the Loan Agreement provides, "The parties hereto hereby waive all rights to a *court trial* or *trial by jury* with respect to any dispute, controversy or claim under this agreement and the borrowers agree to settle by arbitration any controversy between the borrowers and the lender or its affiliates arising out of or relating to this agreement."[18] Louisiana's executory process is not a "court trial" or "trial by jury"; indeed, it is not even a "plenary judicial proceeding."[19] Rather,

---

[17] Doc. 1-7, p. 52; *see also* Doc. 1-17, p. 50; Doc. 1-20, p. 50.

[18] Doc. 1-4, p. 17 (capitalization omitted; emphasis added)

[19] *Myers v. U.S.*, 647 F.2d 591, 601 (5th Cir. 1981); *see also Republic Bank v. U.S.*, 527 F.Supp. 415, 417 (W.D.La. 1981).

executory process is "an expedited in rem action derived from the civil law."[20]

Through executory process, "a creditor may effect the seizure and sale of property in an ex parte proceeding, without previous citation and judgment, in order to enforce a mortgage or privilege that is evidenced by an authentic act importing a confession of judgment."[21] To obtain the ex parte order of seizure and sale, the creditor must file a petition that comports with the general pleading requirements of Louisiana law, and must submit with his petition authentic evidence necessary to prove his right to use executory process - e.g., the note and the authentic act of mortgage importing a confession of judgment.[22] The order for executory process "is not considered a judgment in any technical sense," as Louisiana executory proceedings are based upon a contractual confession of judgment.[23] "Such a confession of judgment effectively waives the right to a routine adversary

---

[20]*Myers* at 597; *see also Hood Motor Co., Inc. v. Lawrence*, 320 So.2d 111, 112-13 (La. 1975). A "plenary action" is an action involving "a full hearing or trial on the merits, as opposed to a summary proceeding." *Plenary action*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Myers v. U.S.*, 647 F.2d 591, 599 (5th Cir. 1981)("plenary judicial proceedings embody[] the procedures associated with a complete and formal hearing on the merits, as distinguished from a more informal summary determination"). A plenary proceeding is akin to an "ordinary proceeding" under Louisiana law. La. Code Civ. P. art. 851, et seq. In contrast, a trial is a "formal judicial examination of evidence and determination of legal claims in an adversary proceeding." *Trial*, BLACK'S LAW DICTIONARY (10th ed. 2014). As will be discussed, *supra*, Louisiana executory proceedings involve no determination of legal claims, nor are they adversarial proceedings.

[21]*Id.* (footnotes omitted); *Hood* at 113. An authentic act is a writing executed before a notary public in the presence of two witnesses. La. Civ. Code art. 1833. "An act evidencing a mortgage or privilege imports a confession of judgment when the obligor therein acknowledges the obligation secured thereby, whether then existing or to arise thereafter, and confesses judgment thereon if the obligation is not paid at maturity." La. Code Civ. P. art. 2632.

[22]La. Code Civ. P. arts. 2634, 2635.

[23]*Myers* at 597 (internal quotation marks omitted).

hearing."[24]  Indeed, even the clerk of court may issue the order for executory process.[25] Unlike an ordinary proceeding where  citation is essential unless the defendant has voluntarily answered the demand, where a party has previously confessed judgment, "'his written confession is one of those answers which waive citation, delay, and default, and *le[aves] no issue to be tried.*'"[26] Thus, the Court finds this matter does not involve a "court trial" or "trial by jury," which rights thereto the parties waived in favor of arbitration.

Further, the Court finds under the principles of contract interpretation, arbitration of this matter is not required. While the loan agreement states the parties agree to settle by arbitration "any dispute, controversy or claim under this agreement," it additionally states, "upon occurrence and during the continuance of an Event of Default," Goldman Sachs may proceed to "protect and enforce [its] rights by suit in equity, action of law and/or other appropriate proceeding either for specific performance of any covenant or condition contained in this Agreement, [or] any other Loan Document." This language is broad enough to encompass a proceeding for executory process. It is well-settled in the interpretation of contracts, the specific controls the general, and therefore the enforcement provisions identified as available after an event of default control in this matter.[27] Thus, after an event of default, under this contractual language, Goldman Sachs is not *limited to* an arbitration suit; rather, it may proceed by filing a suit in equity, an action of law, or any "*other*

---

[24]*Buckner v. Carmack*, 272 So.2d 326, 330 (La. 1973); *see also Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 885 (5th Cir. 1989).

[25]La. Code Civ. P. art. 283; *Myers* at 597; *Hood* at 114-15.

[26]*Buckner* at 331 (quoting *Marbury v. Pace*, 29 La.Ann. 557 (1877)).

[27]*Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn.*, 84 So. 790, 79 (La. 1920); *see also Corbello v. Iowa Prod.*, 850 So.2d 686, 704 (La. 2003), *superceded by statute on other grounds.*

*appropriate proceeding*" to enforce the agreement.

The Mortgages likewise contain an arbitration clause, whereby the "*Mortgagor* agrees to settle all claims relating to this Mortgage by arbitration. . . ."[28] However, like the loan agreement, the mortgages further provide, "If an Event of Default exists and is continuing under the Loan Agreement . . ., *Mortgagee* may, at *Mortgagee's* election, take such action permitted at law or in equity, without notice or demand. . ., including but not limited to . . . proceedings for the complete foreclosure of this Mortgage, by exercise of the JUDICIAL FORECLOSURE or otherwise," as well as "all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity."[29] Additionally, Exhibit B to the Mortgages, entitled "Special Provisions for the State of Louisiana, states "if an Event of Default occurs under this Mortgage, at any time thereafter, *Mortgagee*, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights and remedies provided by law: . . . commence appropriate Louisiana foreclosure proceedings under this Mortgage."[30] Unlike the loan agreement and mortgage, Exhibit B contains no arbitration clause, nor reference to waiving a right to trial. Exhibit B further provides, "In the event of any inconsistencies between terms and conditions of this Exhibit B and the terms and conditions of this Mortgage, the terms and conditions of this Exhibit B shall control and be binding."[31]

---

[28]Doc. 1-6, p. 37 (emphasis added)

[29]Doc. 1-6, pp. 15- 17 (capitalization in original; italics added)

[30]Doc. 1-7, p. 52 (emphasis added)

[31]Id.

In support of the motion to compel arbitration, defendants rely upon *Ellis Const., Inc. v. Vieux Carre Resort Properties, LLC*, 934 So.2d 206 (La.App. 2006). In *Ellis*, a secured lender exercised its right under a collateral mortgage to use executory process to seize and sell the encumbered property for amounts due under a promissory note, made in connection with a construction contract. The borrower then filed a petition for preliminary and permanent injunction to arrest seizure and sale of the mortgaged property, asserting the collateral mortgage documents were executed to secure a separate loan with no outstanding indebtedness. The borrower later amended its motion for injunction and asserted the debt was unliquidated and subject to mediation and arbitration. Thus in *Ellis*, at the very least, the borrower specifically disputed the amount of debt - *i.e.*, whether an event of default had occurred.[32] On appeal, the court held the borrower was entitled to a stay of the seizure and sale "because of the suspensive condition before executory process may commence, to-wit, arbitration of the amount owed by [the borrower], if any."[33] Unlike *Ellis*, in this matter there is no dispute that there exists an Event of Default under the Loan Documents.[34]

Goldman Sachs has satisfied all requirements necessary to support its right to use executory process. It has filed a complaint praying for seizure and sale of the encumbered property and satisfied general pleading requirements.[35] With its complaint, Goldman Sachs has submitted authentic

---

[32]It is unclear whether the borrower, after amendment, maintained its argument no debt was owed, as the collateral mortgage secured a separate construction loan with no outstanding indebtedness.

[33]*Ellis*, 934 So.2d at 213.

[34]While defendants argue there is an additional amendment to the Loan Documents extending the maturity date of the loan (addressed in § V, *supra*), they do not dispute there is an event of default under the terms of the Loan Documents this Court finds to be valid and binding.

[35]La. Code Civ. P. art. 2634

evidence of: (1) the note evidencing the obligation secured by the mortgages[36]; and (2) the authentic acts of mortgage on immovable property importing a confession of judgment.[37] Goldman Sachs has additionally submitted authentic evidence of the amount of the indebtedness sought to be enforced, and its right to enforce the mortgage under executory process.[38] In light of the foregoing, the Court finds Goldman Sachs' right to resort to judicial enforcement of the confessed judgments via executory process is not impacted by the Arbitration Clause. To conclude otherwise would neutralize, ignore and treat as surplusage Exhibit B to the Mortgages and the "Other Remedies" provision contained in the Loan Agreement.[39] Such an interpretation would lead to an illogical and an inequitable result. Accordingly, the Court finds the motion to compel arbitration must be denied.

## V.    Motion to File Amended Motion to Compel Arbitration

Defendants have submitted a "Motion For Leave To File Amended Motion to Compel Arbitration and Stay Proceedings Pending Arbitration."[40] Pursuant to that motion, defendants move to put certain e-mail correspondence before the Court, which defendants allege created an additional forbearance agreement, whereby Goldman Sachs agreed to forbear from exercising its rights under

---

[36]The original note was attached to the complaint as Ex. 1. [Doc. 1, p. 4, ¶ 7] An original note is sufficient to satisfy the requirement of "authentic evidence" of the note. *See e.g.* La. Code Civ. P. art. 2636(1), (6); La. R.S. 9:5555(A); *U.S. Bank Nat. Ass'n v. Dumas*, 144 So.3d 29, 36-37 (La.App. 2014); *Colonial Finance, LLC v. Colonial Golf & Country Club, Inc.*, 72 So.3d 349, 352 (La.App. 2011).

[37]La. Code Civ. P. art. 2635.

[38]Doc. 1, p. 5, ¶ 14; *Id.* at pp. 12-13; *see also* La. C.C.P. art. 2637 (Comment (a)); La. R.S. 10:9-629; *Colonial Finance, LLC v. Colonial Golf & Country Club, Inc.*, 72 So.3d 349, 351 (La.App. 2011); *Ellis*, 934 So.2d at 212.

[39]La. Civ. Code art. 2050; *see also Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 743 (5th Cir. 1998).

[40]Doc. 44

the loan documents through August 25, 2015. Because this executory proceeding was brought on July 8, 2015, defendants contend it was filed prematurely.[41] The contracts in this matter require that any modification of the loan documents be in writing and signed by all parties.[42] The e-mail correspondence upon which defendants rely are not signed by all parties.[43] Thus, the Court DENIES defendants' motion for leave, as it finds the e-mail correspondence to be irrelevant to the matter at hand.

## VI.   Conclusion

For the reasons set forth above, the motion to compel arbitration [Doc. 32] and the motion for leave to file an amended motion to compel arbitration [Doc. 44] are DENIED.

The motion for leave to file a reply to the motion to compel arbitration [Doc. 41] is DENIED, as it raises new issues and introduces new evidence - some of which is inadmissible - for the first time in a proposed reply brief.[44] The motion to strike arguments and evidence, or alternatively, motion for leave to file sur-reply [Doc. 42] is DENIED AS MOOT. The motion for leave to supplement the record of the case [Doc. 48] is DENIED, as the information contained therein is irrelevant to this executory proceeding.

---

[41]Doc. 44-1; Doc. 41-1

[42]Doc. 1-4, p. 16; Doc. 1-5, p. 3; *see also* Doc. 1-3, p. 3; Doc. 1-6, p. 36.

[43]While e-mail signatures can satisfy the signature requirement of a contract under Louisiana law, there must be a showing that the parties agreed to conduct themselves by electronic means, and a showing that the signer intended to do a legally significant act. *Celtic Marine Corp. v. James C. Justice Companies, Inc.*, 760 F.3d 477, 482 (5th Cir. 2014); *Regions Bank v. Cabinet Works, LLC*, 92 So.3d 945, 956 (La.App. 2012). No such showing has been made in this matter.

[44]*See e.g. Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922, 927 (5th Cir. 2008).

The "Motion to Strike Affirmative Defenses, Answer, and Counterclaim for Declaratory Relief" [Doc. 10], filed by Goldman Sachs is GRANTED, as an answer is not permitted in a Louisiana executory proceeding.[45]

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 24th day of May, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[45]La. Civ. Code art. 2642; *id.* at note (a).