**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA - LAFAYETTE DIVISION**

| | |
|---|---|
| **GOLDMAN SACHS BANK USA,** | **CIVIL CASE NO. 15-2018** |
|     **Plaintiff,** | **JUDGE REBECCA F. DOHERTY** |
| **v.** | **MAGISTRATE CAROL B. WHITEHURST** |
| **MICHEL B. MORENO, TIFFANY C. MORENO, MBM 2011 DOH GRANTOR RETAINED ANNUITY TRUST, TCM 2011 DOH GRANTOR RETAINED ANNUITY TRUST, MBM 2011 MGH GRANTOR RETAINED ANNUITY TRUST, TCM 2011 MGH GRANTOR RETAINED ANNUITY TRUST, MORENO PROPERTIES TWO, L.L.C., AND NICHOLSON ESTATES, L.L.C.,** | |
|     **Defendants.** | |

**MICHEL AND TIFFANY MORENO'S**
**INITIAL APPEARANCE, ANSWER, AND COUNTERCLAIM**

Defendants, Michel and Tiffany Moreno ("Moreno" or "Defendants"), through undersigned counsel, submit their Initial Appearance[1], Answer and Counterclaim to the Verified Complaint to Foreclose by Executory Process, With Benefit of Appraisal ("the Complaint") filed on behalf of Goldman Sachs Bank USA ("Goldman" or "Plaintiff").

**ANSWER**

Defendants Michel and Tiffany Moreno ("Moreno") respectfully answer as follows:

1.    The Plaintiff is Goldman Sachs Bank USA, a New York state-chartered bank with its principal place of business in New York (the "Plaintiff" or the "Mortgagee").

---

[1] Moreno has never been served with process in this lawsuit. Accordingly, there is no deadline by which Moreno must file an answer or counterclaim. This pleading is Moreno's first filing and appearance in this lawsuit.

**RESPONSE: Defendants have no knowledge of the domicile or principal place of business of Plaintiff and, accordingly, can neither admit or deny the allegations of Paragraph 1 of the Complaint.**

2.      Made Defendants herein are (collectively referred to as the "Defendants"):

(a)      Michel B. Moreno ("Mr, Moreno"), who is over the age of majority and residing in Harris County, Texas, and is therefore considered a citizen of the State of Texas;

(b)      Tiffany C. Moreno ("Ms. Moreno"), who is over the age of majority and residing in Harris County, Texas, and is therefore considered a citizen of the State of Texas;

(c)      'MBM 2011 DOH Grantor Retained Annuity Trust ("MBM-DOH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, who is over the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (Navarro Savings Association v. Lee, 446 U.S. 458 (1980));

(d)      TCM 2011 DOH Grantor Retained Annuity Trust ("TCM-DOH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, who is over the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (Navarro Savings Association v. Lee, 446 U.S. 458 (1980));

(e)      MBM 2011 MGH Grantor Retained Annuity Trust ("MBM-MGH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, a person over the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (Navarro Savings Association v. Lee, 446 U.S. 458 (1980));

(f)      TCM 2011 MGH Grantor Retained Annuity Trust ("TCM-MGH"), which is a Louisiana trust managed by the trustee, Dalis Moreno Waguespack, a person over

(g)    the age of majority and residing in Lafayette Parish, Louisiana, and is therefore considered a citizen of the State of Louisiana (Navarro Savings Association v. Lee, 446 U.S. 458 (1980));

(h)    Moreno Properties Two, L.L.C. ("Moreno Properties Two"), is a Louisiana limited liability company with its sole member Moreno Properties, L.L.C., a Louisiana limited liability company with its members consisting of Mr. Moreno and Ms. Moreno, and is therefore considered a citizen of the State of Texas; and

(i)    Nicholson Estates, L.L.C. ("Nicholson Estates"), is a Louisiana limited liability company, with its sole member consisting of Moreno Properties, L.L.C., a Louisiana limited liability company with its members consisting of Mr. Moreno and Ms. Moreno, and is therefore considered a citizen of the State of Texas.

**RESPONSE: Defendants deny that they reside in Harris County as alleged in Paragraph 2 of the Complaint, but admit that they are citizens of Texas.  Defendants neither admit nor deny the remaining allegations as to other parties.**

## JURISDICTION

3.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, excluding interest and costs.

**RESPONSE: Paragraph 3 of the Complaint states a legal conclusion that need not be admitted or denied.  Moreover, Defendants have no knowledge of the domicile and principal place of business of Plaintiff and all other defendants named in the Complaint and therefore cannot admit that complete diversity of citizenship exists; however, Defendants admit that the amount in controversy exceeds $75,000.00.**

4.     The Plaintiff is considered a citizen of New York because it is a New York state-chartered bank with its principal place of business located in New York. None of the Defendants are considered citizens of the State of New York. Accordingly, there is complete diversity of citizenship between Plaintiff and Defendants.

**RESPONSE: Defendants have no knowledge of the domicile or principal place of business of Plaintiff and, accordingly, can neither admit or deny the allegations of Paragraph 4 of the Complaint; moreover, Paragraph 4 of the Complaint states a legal conclusion that need not be admitted or denied.**

5.     This Court has personal jurisdiction over Defendants because they are either considered citizens of Louisiana or regularly transact business in Louisiana. Further, this action arises from a promissory note that was made by the Borrowers (as defined hereafter in Paragraph 7) in Plaintiff's favor and secured by, among other things, a first, second, and third mortgage over immovable property located in Iberia Parish, Louisiana.

**RESPONSE: Paragraph 5 of the Complaint states a legal conclusion that need not be admitted or denied.  The factual allegations of Paragraph 5 of the Complaint are denied in that they are inconsistent with the allegations in Paragraphs 2 (a) and (b) of the Complaint.**

### VENUE

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the immovable property at issue in this matter is in this district.

**RESPONSE: The factual allegations of Paragraph 6 of the Complaint are admitted but Defendants neither admit nor deny the legal conclusion stated therein that proper venue in this Court exists as to all defendants.**

## FACTS AND ALLEGATIONS

### A.    The Note and the Loan Agreement

7.    Mr. Moreno, Ms. Moreno, MBM-DOH, TCM-DOH, MBM-MGH, TCM-TGH and Moreno Properties Two (the "Borrowers"), executed a Consolidated, Amended and Restated Note in favor of the Plaintiff (the "Note"), dated October 11, 2013, in the original principal amount of $52,370,000.00. The original Note is attached hereto and made a part of hereof as **Exhibit 1.**

**RESPONSE: The Exhibit referred to in Paragraph 7 is the best evidence of its own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.**

8.    The Note provides that it is issued pursuant to, and is entitled to the benefits of, that certain Amended and Restated Loan Agreement, which amends and restates previous loan agreements, dated October 11, 2013 (the "October 11, 2013 Loan Agreement"). A copy of the October 11, 2013 Loan Agreement is attached hereto and made a part hereof as Exhibit 2. The October 11, 2013 Loan Agreement was amended and modified pursuant to that First Amended and Restated Loan Agreement dated June 30, 2014 (the "June 30, 2014 Loan Amendment") (collectively the "Loan Agreement"). A copy of the June 30, 2014 Loan Amendment is attached hereto and made a part hereof as Exhibit 3.

**RESPONSE: The Exhibits referred to in Paragraph 8 are the best evidence of their own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.**

9.    Pursuant to the Note and the Loan Agreement, before default, interest accrues on the Note at a per annum rate equal to the sum of: (i) LIBOR for the then-current LIBOR Reset Period (as defined in the Loan Agreement) plus (ii) a rate equal to 8% per annum.

**RESPONSE: The Exhibits referred to in Paragraph 9 are the best evidence of their own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.**

10.     After default, the principal balance of all accrued and unpaid interest due on the Note and all other obligations, interest, fees, charges and expenses of the Borrowers to the Plaintiff arising in connection with the Loan Documents (the "Obligations"), shall bear an interest rate that is 15% per annum in excess of the interest rate otherwise applicable to such Obligations from time to time until paid (the "Default Interest"), to the extent permitted by applicable law. Any interest payable pursuant to the foregoing proviso which is not paid when due may be added to the outstanding principal sum of the Loans, as defined in the Loan Agreement, and itself bear interest accordingly to the extent permitted by applicable law.

**RESPONSE: The Exhibits referred to in Paragraph 10 are the best evidence of their own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.**

11.     The Note also provides that the Borrowers shall pay all of Plaintiff's costs and expenses including, without limitation, all reasonable attorneys' fees and expenses incurred in connection with the enforcement of or preservation of rights under the Note, Loan Agreement, or other loan documents (collectively the "Loan Documents").

**RESPONSE: The Exhibits referred to in Paragraph 11 are the best evidence of their own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.**

12.     The Note is in default for, among other things, failing to pay the outstanding amounts due under the Note on the stated "Maturity Date", July 11, 2014.

**RESPONSE: The Exhibit referred to in Paragraph 12 is the best evidence of its own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.  Moreover, Paragraph 12 of the Complaint states a legal conclusion that need not be admitted or denied.**

13.     Upon default, the Plaintiff exercised its right to accelerate the Maturity Date, making the Obligations under the Loan Documents due and exigible.

**RESPONSE: The documents referred to in Paragraph 13 are the best evidence of their own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.  Moreover, Paragraph 13 of the Complaint states a legal conclusion that need not be admitted or denied.**

14.     Despite amicable demand, the total outstanding amount due under the Loan Documents is $58,437,735.51, comprised of the following, as of June 15, 2015:

        (a)     Principal in the amount of $47,401,003.16; and

        (b)     Accrued interest, in the amount of $11,464,099.79.  After June 15, 2015, interest will continue to accrue on the principal balance due, as described in the Loan Documents, until paid. In addition to the foregoing, the Plaintiff is entitled to its reasonable attorneys' fees in collecting the amounts due and owing under the Loan Documents and all costs of these proceedings including any additional sums authorized by the Loan Documents that may become due to the Plaintiff until the U.S. Marshall's sale.

**RESPONSE:  The Exhibits referred to in Paragraph 14 are the best evidence of their own contents and, to the extent the allegations of this Paragraph may vary from those contents, said allegations are denied.  Moreover, Paragraph 14 of the Complaint states a**

**legal conclusion that need not be admitted or denied; however, if an answer is deemed**

**requisite, the allegations are denied based on the allegations set forth herein.**

>    **B.      The Mortgages on the Nicholson Estates Property and the Port Road
>              Property**

15.     The Loan Documents are secured by, among other things, a first mortgage over

the Nicholson Estates Property (as defined hereafter in Paragraph 19) and a first, second, and third

mortgage on the Port Road Property (as defined hereafter in Paragraph 26).

**RESPONSE: The Exhibits referred to in Paragraph 15 are the best evidence of**

**their own contents and, to the extent the allegations of this Paragraph may vary from those**

**contents, said allegations are denied.  Moreover, Paragraph 15 of the Complaint states a**

**legal conclusion that need not be admitted or denied, but to the extent an answer is deemed**

**requisite, same are denied.**

>    **i.      The First Mortgage on the Nicholson Estates Property**

16.     The first mortgage on the Nicholson Estates Property, is evidenced by, inter alia, that

certain Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements,

Material Agreements and Security Agreement (the "Nicholson Estates Mortgage"), encumbering

certain immovable property located in East Baton Rouge Parish, Louisiana, dated October 11, 2013.

The Nicholson Estates Mortgage was passed before a notary public and two witnesses, and properly

recorded on October 21, 2013, in the records of East Baton Rouge Parish, Louisiana, at Orig. 968,

Bndl. 12537. A certified copy of the Nicholson Estates Mortgage is attached hereto as Exhibit 4.

**RESPONSE: Defendants allege that Exhibit 4 is the best evidence of its own**

**contents and, to the extent the allegations of Paragraph 16 of the Complaint may vary from**

**those contents, said allegations are denied.  Furthermore, the legal conclusions contained in**

**Paragraph 16 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

17.     The Nicholson Estates Mortgage was executed by Nicholson Estates (the "Nicholson Mortgagor"), through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a certified resolution of its Manager, attached to the Nicholson Mortgage. See Exhibit 4.

**RESPONSE: Defendants admit execution of the original document attached as Exhibit 4 to the Complaint as alleged in Paragraph 17 but allege that that Exhibit is the best evidence of its own contents and, to the extent the allegations of Paragraph 17 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 17 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

18.     The Nicholson Estates Mortgage was granted to secure the full and prompt payment of the Note, the Loan Agreement and Loan Documents, together with interest, attorneys' fees, costs of these proceedings, payment of insurance premiums, taxes, keeper's fees, and the performance of all other obligations under the Nicholson Estate Mortgage (the "Nicholson. Indebtedness").

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 18 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 18 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

19.     Pursuant to the Nicholson Estates Mortgage, in order to secure the prompt and punctual payment and satisfaction of the Nicholson Indebtedness, the Nicholson Mortgagor specifically-mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Nicholson Mortgagor's present and future rights, title and interest in and to the certain immovable property, located in Baton Rouge, Louisiana, a complete legal description of which is attached hereto as Exhibit 5 (the "Nicholson Estates Property").

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 19 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 19 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

20.     A certified copy of the corresponding UCC-1 Financing Statement (the "Nicholson Estates UCC Financing Statement"), filed and recorded in East Baton Rouge Parish at UCC Number 17-1395914, in connection with the security interest granted in the personal and movable property of the Nicholson Estates Property is attached hereto as Exhibit 6, The property described in the Nicholson Estates UCC Financing Statement is included in the Nicholson Estates Property description. See Exhibit 5.

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 20 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 20 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

21.     The Nicholson Mortgagor specifically acknowledged that the Nicholson Estates Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Documents made by the Borrowers and shall be cross-collateralized with the additional properties identified in the Nicholson Estates Mortgage and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan.

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 21 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 21 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

  **ii.**  **The First Mortgage on the Port Road Property**

22.     The first mortgage on the Port Road Property was executed by Moreno Properties Two in favor of Regions Banks evidenced by, inter alia, that certain Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement (the "Original First Mortgage"), encumbering certain immovable property located in Iberia Parish, Louisiana, dated September 15, 2010. The Original First Mortgage was passed before a notary public and two witnesses, and properly recorded on September 15, 2010, in the records of Iberia Parish, Louisiana, at Book 1465, Page 63 under File No. 2010-00010271. A certified copy of the Original First Mortgage is attached hereto as Exhibit 7.

**RESPONSE:  Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 22 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions**

**contained in Paragraph 22 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

23.     Moreno Properties Two (the "Moreno Mortgagor"), executed the Original First Mortgage through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a written consent of the member, a certified copy of which is attached to the Original First Mortgage (See Exhibit 7).

**RESPONSE: Defendants allege that Exhibit 7 is the best evidence of its own contents and, to the extent the allegations of Paragraph 23 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 23 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

24.     The Original First Mortgage was assigned to Plaintiff pursuant to that certain Assignment of Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement, dated October 11, 2013, executed in the presence of a notary and two witnesses, and properly recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 174 under File No. 2013-00011972 (the "Assignment of the Original First Mortgage"). A certified copy of the Assignment of the First Mortgage is attached hereto as **Exhibit 8**.

**RESPONSE: Defendants allege that Exhibit 8 is the best evidence of its own contents and, to the extent the allegations of Paragraph 24 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 24 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

25.     The Original First Mortgage was later amended and modified by that certain Mortgage Modification to Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement, recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 290 under File No. 2013-00011974 (the "First Mortgage Modification"). The First Mortgage Modification, a certified copy of which is attached hereto as Exhibit 9, modified the terms to provide, among other things, that the Port Road Property shall be collateral for up to $40,000,000 of the loan made to the Borrowers as evidenced by the Note (the "First Port Road Indebtedness"). The Mortgage Modification further provides, among other things, that the Moreno Mortgagor specifically acknowledged that the Port Road Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Document made by the Borrowers and shall be cross-collateralized with the additional properties identified in the First Mortgage Modification and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan. The Original First Mortgage, the Assignment of the Original First Mortgage, and the First Mortgage Modification shall collectively be referred to as the "First Mortgage").

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 25 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 25 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

26.     Pursuant to the First Mortgage, in order to secure the prompt and punctual payment and satisfaction of the First Port Road Indebtedness, the Moreno Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the

Moreno Mortgagor's present and future rights, title and interest in and to the certain immovable property, located in New Iberia, Louisiana, a complete legal description of which is as attached hereto as Exhibit 10 (the "Port Road Property"),

**RESPONSE: Defendants allege that Exhibit 10 is the best evidence of its own contents and, to the extent the allegations of Paragraph 26 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 26 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

27.    Certified copies of the corresponding UCC-1 Financing Statements and UCC-3, Financing Statements (the "The Port Road UCC Financing Statements"), filed and recorded in Iberia Parish at File Numbers: 2013-00004005, 2013-00004004, 2013-00003979, 2013-00003978, 2013-00003977, 2013-00003980, in connection with the security interest granted in the personal and movable property of the Port Road Property on the First, Second, and Third Mortgages, as defined herein, are collectively attached as Exhibit 11.  The property described in the Port Road UCC Financing Statements is included in the Port Road Property description. See Exhibit 10.

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 27 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 27 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

### iii.   The Second Mortgage on the Port Road Property

28.     The second mortgage on the Port Road Property was executed by Moreno Properties Two in favor of the Plaintiff as evidenced by that certain Second Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement (the "Original Second Mortgage"), encumbering certain immovable property located in Iberia Parish, Louisiana, dated October 10, 2011 The. Original Second Mortgage was passed before a notary public and two witnesses, and properly recorded on October 22, 2013, in the records of Iberia Parish, Louisiana, at Book 1579, Page 178 under File No. 2013-00011973. A certified copy of the Original Second Mortgage is attached hereto as **Exhibit 12**.

**RESPONSE: Defendants allege that Exhibit 12 is the best evidence of its own contents and, to the extent the allegations of Paragraph 28 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 28 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

29.     The Original Second Mortgage was executed by Moreno Properties Two through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a written consent of the member, a certified copy of which is attached to the Original Second Mortgage (See Exhibit 12).

**RESPONSE: Defendants allege that Exhibit 12 is the best evidence of its own contents and, to the extent the allegations of Paragraph 29 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in**

**Paragraph 29 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

30.     The Original Second Mortgage was later amended and modified by that certain Mortgage Modification to Second Lien Mortgage, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement, recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 408 under File No. 2013-00011975 (the "Second Mortgage Modification"). The Second Mortgage Modification, a certified copy of which is attached hereto as Exhibit 13, modified the terms to provide, among other things, that the Port Road Property shall be collateral for up to $40,000,000 of the loan made to the Borrowers as evidenced by the Note (the "Second Port Road Indebtedness"). The Original Second Mortgage and the Second Mortgage Modification shall collectively be referred to as the "Second Mortgage."

**RESPONSE:  Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 30 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 30 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

31.     Pursuant to the Second Mortgage, in order to secure the prompt and punctual payment and satisfaction of the Second Port Road Indebtedness, the Moreno -Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Moreno Mortgagor's present and future rights, title and interest in the above-described Port Road Property. The Moreno Mortgagor specifically acknowledged that the Port Road Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Document

made by the Borrowers and shall be cross-collateralized with the additional properties identified in the Original Second Mortgage and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan.

**RESPONSE: Defendants allege that the referenced Exhibit is the best evidence of its own contents and, to the extent the allegations of Paragraph 31 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 31 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

### iv.    The Third Mortgage on the Port Road Property

32.    The third mortgage on the Port Road Property is evidenced by, inter alia, that certain Third Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement (the "Original Third Mortgage"), encumbering certain immovable property located in Iberia Parish, Louisiana, dated October 11, 2013. The Original Third Mortgage provides that the Port Road Property shall be collateral for up to $12,370,000, plus all interest, attorneys' fees, insurance premiums, municipal charges, taxes, costs and expenses, of the loan made to the Borrowers as evidenced by the Note (the "Third Port Road Indebtedness"). The Original Third Mortgage was passed before a notary public and two witnesses, and properly recorded on October 22, 2013, in the records of Iberia Parish, Louisiana, at Book 1579, Page 416 under File No. 2013-00011976. A certified copy of the Original Third Mortgage is attached hereto as **Exhibit 14**.

**RESPONSE: Defendants allege that Exhibit 14 is the best evidence of its own contents and, to the extent the allegations of Paragraph 32 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in**

**Paragraph 32 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

33.     The Original Third Mortgage was executed by Moreno Properties Two, through its sole member, Moreno Properties, L.L.C., represented by Mr. Moreno, its manager and duly authorized representative pursuant to a written consent of the member, a certified copy of which is attached to the Original Third Mortgage (See Exhibit 14).

**RESPONSE: Defendants allege that Exhibit 14 is the best evidence of its own contents and, to the extent the allegations of Paragraph 33 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 33 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

34.     The Original Third Mortgage was assigned by MBM-MGH and TCM-MGI:I , through their duly authorized representative, the trustee, Dalip Moreno Waguespack, to Plaintiff pursuant to that certain Assignment of Third Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement, dated October 11, 2013, executed in the presence of a notary and two witnesses, and properly recorded in the records of Iberia Parish, Louisiana, at Book 1579, Page 528 under File No. 2013¬00011977 (the "Assignment of the Original Third Mortgage"). A certified copy of the Assignment of the Original Third Mortgage is attached hereto as Exhibit 15. The Original Third Mortgage and the Assignment of the Original Third Mortgage, shall collectively be referred to as the "Third Mortgage."

**RESPONSE: Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 34 of the Complaint may**

**vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 34 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

35.     Pursuant to the Third Mortgage, in order to secure the prompt and punctual payment and satisfaction of the Third Port Road Indebtedness, the Moreno Mortgagor specifically mortgaged, affected and hypothecated unto and in favor of the Mortgagee, any and all of the Trust Mortgagors' present and future rights, title and interest in the above-described Port Road Property. The Moreno Mortgagor specifically acknowledged that the Port Road Property shall be collateral for the entire Note, Loan Agreement, and any other Loan Document made by the Borrowers and shall be cross-collateralized with the additional properties identified in the Original Third Mortgage and shall be cross-defaulted with the mortgages recorded against such additional properties in favor of Mortgagee as collateral for the loan.

**RESPONSE:  Defendants allege that the referenced Exhibits are the best evidence of their own contents and, to the extent the allegations of Paragraph 35 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 35 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

**v.      The Mortgages on the Nicholson Estates Property and the Port Road Property and the Confession of Judgment**

36.     The Nicholson Indebtedness, the First Port Road Indebtedness, the Second Port Road Indebtedness, and the Third Port Road Indebtedness shall collectively be referred to as the "Indebtedness."

**RESPONSE: Paragraph 36 of the Complaint alleges no facts capable of being admitted or denied but, to the extent an answer is deemed requisite, same are denied.**

37.     Pursuant to the Nicholson Estates Mortgage and each of the Port Road Mortgages (collectively the "Mortgages"), for the purposes of foreclosure under Louisiana executory process procedures, (the Nicholson Mortgagor and the Moreno Mortgagor shall collectively be referred to as the "Mortgagors"), the Mortgagors confessed judgment up to the full amount of the Indebtedness in favor of the Mortgagee. See Exhibit 4, p. 108, Exhibit 7, p. 9, Exhibit 9, p. 113, Exhibit, 12, p. 107, Exhibit 14 p. 107). The Mortgagors also waived the right to the notice of seizure and all other benefits provided under articles 2331, 2722, 2723 of the Louisiana Code of Civil Procedure.

**RESPONSE: For answer to Paragraph 37, Defendants allege that the Exhibits to the Complaint referred to therein are the best evidence of their own contents and, to the extent the allegations of Paragraph 37 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 37 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

38.     Pursuant to each of the Mortgages, the Mortgagors consented and agreed that, in the event the Mortgagee elects to commence appropriate Louisiana foreclosure proceedings under the Mortgages, the Mortgagee may cause the Nicholson Estates Property and the Port Road Property to be immediately seized and sold, under ordinary or executory process, in accordance with applicable Louisiana law, without appraisement, which was expressly waived, to the highest bidder for cash, and without the necessity of making additional demand upon or

notifying the Mortgagors or placing the Mortgagors in default, all of which were expressly waived in the Mortgages.

**RESPONSE: For answer to Paragraph 38, Defendants allege that the Exhibits to the Complaint referred to therein are the best evidence of their own contents and, to the extent the allegations of Paragraph 38 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 38 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

39.     Pursuant to each of the Mortgages, the Mortgagors agreed that, should any or all of the Nicholson Estates Property or the Port Road Property be seized as an incident to an action for recognition or enforcement of the Mortgage, pursuant to the provisions of the Louisiana Revised Statutes, Title 9, Section 5136, the court issuing any such order shall, if requested by the Mortgagee, appoint the Mortgagee, or any agent designated by the Mortgagee, or any person or entity named by Mortgagee at the time such seizure is required, or at any time thereafter, as keeper of the Mortgaged Property as provided under La. R.S. 9:5136 -5140.2 (the "Keeper"). The Mortgagors further agreed to pay the Keeper.

**RESPONSE: For answer to Paragraph 39, Defendants allege that the Exhibits to the Complaint referred to therein are the best evidence of their own contents and, to the extent the allegations of Paragraph 39 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 39 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

40.     Pursuant to each of the Mortgages, the Mortgagors agreed that, should it become necessary for the Mortgagee to foreclose under the Mortgages, all declarations of fact, which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person declaring such facts to lie within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. 9:3509.1, La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, where applicable.

**RESPONSE: For answer to Paragraph 40, Defendants allege that the Exhibits to the Complaint referred to therein are the best evidence of their own contents and, to the extent the allegations of Paragraph 40 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 40 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

41.     The Mortgagors further agreed that all reasonable costs, expenses and liabilities of every character incurred by the Mortgagee in connection with managing, operating and maintaining the Nicholson Estates Property and the Port Road Property, respectively, shall constitute an obligation owing by the Mortgagors to the Mortgagee, and that all such costs, expenses and liabilities shall constitute a portion of the Indebtedness secured by the Mortgages.

**RESPONSE: For answer to Paragraph 41, Defendants allege that the Exhibits to the Complaint referred to therein are the best evidence of their own contents and, to the extent the allegations of Paragraph 41 of the Complaint may vary from those contents, said allegations are denied. Furthermore, the legal conclusions contained in Paragraph 41 need not be admitted nor denied but, to the extent an answer is deemed requisite, same are denied.**

**RELIEF SOUGHT**

42.     The Plaintiff seeks an Order for Executory Process, wherein a Writ of Seizure and Sale is issued and, thereafter, the U.S. Marshall of the Western District of Louisiana seizes and sells, at public auction, with benefit of appraisement, to the highest bidder for cash, the Port Road Property in order to pay and satisfy the Indebtedness.

**RESPONSE: Paragraph 42 of the Complaint alleges no facts capable of being admitted or denied but, to the extent an answer is deemed requisite, same are denied. Specifically, Defendants deny that executory process is available under the Federal Rules of Civil Procedure and, therefore, deny that Plaintiff is entitled to the relief requested in Paragraph 42 of the Complaint.**

43.     The Plaintiff further seeks an Order for Executory Process, wherein a Writ of Seizure and Sale is issued and, thereafter pursuant to the appropriate order and /or instruction, the U.S. Marshall of the Western District of Louisiana of the Middle District of Louisiana seizes and sells, at public auction, with benefit of appraisement, to the highest bidder for cash, the Nicholson Estates Property in order to pay and satisfy the Indebtedness.

**RESPONSE: Paragraph 43 of the Complaint alleges no facts capable of being admitted or denied but, to the extent an answer is deemed requisite, same are denied. Specifically, Defendants deny that executory process is available under the Federal Rules of Civil Procedure and, therefore, deny that Plaintiff is entitled to the relief requested in Paragraph 43 of the Complaint.**

44.     The Plaintiff reserves the right to Keepers of the Nicholson Estates Property and the Port Road Property pursuant to the Mortgages and La. R.S. 9:5131 through 5135 and 9:5136 through 5140.2, with full powers of administration, including but not limited to the power to

collect and receive the Leases, Rents and Profits pending the sale of the Nicholson Estates Property and the Port Road Property in order to pay and satisfy the Indebtedness.

**RESPONSE: Paragraph 44 of the Complaint alleges no facts capable of being admitted or denied but, to the extent an answer is deemed requisite, same are denied. Specifically, Defendants deny that executory process is available under the Federal Rules of Civil Procedure and, therefore, deny that Plaintiff is entitled to the relief requested in Paragraph 44 of the Complaint.**

45. The Plaintiff reserves the right to collect any deficiency against the Borrowers and any co-maker or guarantor of the Note should the proceeds of any judicial sale be insufficient to satisfy the amounts due and owing under the Note in full.

**RESPONSE: Paragraph 45 of the Complaint alleges no facts capable of being admitted or denied but, to the extent an answer is deemed requisite, same are denied. Specifically, Defendants deny that deficiency against Defendants is available to Plaintiff and deny that the executory process is available under the Federal Rules of Civil Procedure and, therefore, deny that Plaintiff is entitled to the relief requested in Paragraph 45 of the Complaint.**

46. The Plaintiff reserves the right to collect, enforce, or exercise any of its rights and remedies under the remaining collateral as security for the Loan Documents.

**RESPONSE: Paragraph 46 of the Complaint alleges no facts capable of being admitted or denied but, to the extent an answer is deemed requisite, same are denied. Defendants deny that deficiency against them is available to Plaintiff and deny that the executory process is available under the Federal Rules of Civil Procedure and, therefore, deny that Plaintiff is entitled to the relief requested in Paragraph 46 of the Complaint.**

WHEREFORE, Goldman Sachs Bank USA, prays for the issuance of an Order of Executory Process, and that a writ of seizure and sale be issued directing the U.S. Marshall for the Western District of Louisiana to, after all due advertisements, delays, requisites and other formalities, sell at public auction, with benefit of appraisement, to the highest bidder for cash the above-described Port Road Property to pay and satisfy the Plaintiff's claim, in preference and priority to all others, in the following amounts:

    a) Principal in the amount of $47,401,003.16;

    b) Interest, accrued on the principal amount due and owing, in the amount of $11,464,099.79;

    c) After June 15, 2015, interest will continue to accrue on the principal balance due, as described in the Loan Documents, until paid;

    d) Reasonable attorneys' fees for collecting the amounts due and owing under the Loan Documents;

    e) All costs of these proceedings and for any additional sums authorized 1* the Note and the Mortgages that may become due to the Plaintiff until the U.S. Marshall's sale.

Goldman Sachs Bank USA, further prays for the issuance of an Order of Executory Process, and that a writ of seizure and sale, and any other applicable order and/or instruction, be issued directing the U.S. Marshall for the Middle District of Louisiana to, after all due advertisements, delays, requisites and other formalities, sell at public auction, with benefit of appraisement, to the highest bidder for cash the above-described Nicholson Estates Property to pay and satisfy the Plaintiff's claim, in preference and priority to all others, in the following amounts:

    a) Principal in the amount of $47,401,003.16;

    b) Interest, accrued on the principal amount due and owing, in the amount, of $11,464,099.79;

    c) After June 15, 2015, interest will continue to accrue on the principal balance due, as described in the Loan Documents, until paid;

    d)  Reasonable attorneys' fees for collecting the amounts due and owing under the Note, and the Mortgages;

    e)  All costs of these proceedings and for any additional sums authorized by the Note and the Mortgages that may become due to the Plaintiff until the U.S. Marshall's sale.

Goldman Sachs Bank USA, further prays that it be permitted to bid the aforesaid amounts as a credit bid at the U.S. Marshall's sales of the Nicholson Estates Property and the Port Road Property and that out of the proceeds of the sales, Plaintiff be paid the amount of its claim by preference and priority over all other persons.

Goldman Sachs Bank USA, further prays for a reservation of its rights, among other things, to (a) to exercise any other remedies provided for in the Mortgages or other Loan Documents related to the Note or Loan Agreement, and (b) collect any deficiency against the Borrowers and any co-maker or guarantors of the Loan Documents should the proceeds of any judicial sale be insufficient to satisfy the Plaintiff's claim in full.

Goldman Sachs Bank USA, further prays for a reservation of its rights, among other things, to appoint Keepers for the Nicholson Estates Property and the Port Road Property pursuant to the Mortgages and La. R.S. 9:5131 through 5135 and 9:5136 through 5140,2, with full powers of administration, including but not limited to the power to collect and receive the Leases, Rents and Profits (as defined in Exhibits 5 and 10), pending the sale of the Nicholson Estates Property and the Port Road Property in order to pay and satisfy the amounts due and owing under the Loan Documents.

Finally, Goldman Sachs Bank USA, prays for all orders and decrees necessary in this matter and for any other general or equitable relief to which it may be entitled.

**RESPONSE:  Defendants deny that Plaintiff is entitled to any such relief, and would ask that the Court enter judgment in favor of Defendants.**

## COUNTERCLAIMS FOR DECLARATORY RELIEF

Now as Plaintiffs in Counterclaim, Michel and Tiffany Moreno ("Moreno") respectfully allege as follows:

1.      Made Defendant in these counterclaims is Goldman Sachs Bank USA ("Goldman") which alleges that it is a New York state-chartered bank with its principal place of business in New York.

2.      Michel B. Moreno ("Mr. Moreno"), is over the age of majority and residing in Dallas County, Texas, and is therefore considered a resident of the State of Texas.

3.      Tiffany C. Moreno ("Ms. Moreno"), is over the age of majority and residing in Dallas County, Texas, and is therefore considered a resident of the State of Texas.

### JURISDICTION

4.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, excluding interest and costs.

### VENUE

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the immovable property at issue in this matter is in this district.

### FACTS AND ALLEGATIONS

6.      The following is a brief procedural background of this long-standing proceeding and related concurrent proceedings involving the same parties:

   a) On July 8, 2015, Goldman filed its *Verified Complaint to Foreclose by Executory Process, with Benefit of Appraisal* [Doc. 1] ("**Complaint**") naming as defendants: Michael B. Moreno; Tiffany C. Moreno; Moreno Properties Two, LLC ("Properties"); Nicholson Estates, L.L.C. ("Nicholson"); MBM 2011 DOH Grantor Retained Annuity Trust, TCM 2011 DOH Grantor Retained Annuity Trust, MBM 2011 MGH Grantor Retained Annuity Trust, TCM 2011 MGH Grantor Retained Annuity Trust (collectively the "Trusts"), demanding, *inter alia*, payment under a

promissory note and related loan documents, foreclosure on Properties' immoveable property, and  payment of any <u>deficiency</u>.

b)  On July 22, 2015, Properties, along with Nicholson, filed their *Affirmative Defenses, Answer, and Counterclaims for Declaratory Relief* [Doc. 4] ("**Answer and Counterclaims**") in which Properties and Nicholson specifically pled that they were entitled to arbitration.

c)  On July 30, 2015, the Court issued its *Ruling* [Doc. 7] that executory process under Louisiana procedural laws could not be maintained under the Federal Rules of Civil Procedure and that Goldman would have to file an ordinary proceeding if it wished to go forward in federal court.

d)  On September 18, 2015, Properties and Nicholson filed their *Motion to Compel Arbitration and Stay Proceedings Pending Arbitration* [Doc. 32] ("**Motion to Compel**").

e)  Goldman moved for reconsideration of the July 30, 2015 Ruling and on September 15, 2015, the Court reconsidered its prior Ruling and issued a Ruling [Doc. 28] (the "Second Ruling") holding that the executory proceeding could be maintained in a federal court.

f)   On October 9, 2015, Goldman filed its *Memorandum in Opposition to Motion to Compel Arbitration and Stay Proceedings Pending Arbitration* [Doc. 40] ("**Opposition**").

g)  On April 21, 2016, Goldman then filed an ***Arbitration Demand***, attached hereto as **Exhibit 1**, with the American Arbitration Association ("AAA"), Case No. 01-16-0001-4156 in Dallas, Texas (the "**Arbitration Proceeding**") naming Michel B. Moreno and Tiffany C. Moreno (the "**Morenos**") as respondents.

h)  Also on April 21, 2016, Goldman filed its ***Petition***, attached hereto as **Exhibit 2**, in the 44th Judicial District Court of Dallas County, Texas, No. DC-16 – 04595 (the "**Dallas Lawsuit**") naming the Morenos as defendants.

i)  In the Dallas Lawsuit, on May 2, 2016, Goldman and the Morenos agreed to a temporary injunction from proceeding with the Arbitration Proceeding. Properties was not a party to the Dallas lawsuit.

j)  On May 24, 2016, the Court issued its ***Memorandum Ruling*** [Doc. 57], denying Properties' demand for arbitration, finding "arbitration of this matter is not required."

k)  On July 6, 2016, Goldman, Properties, the Morenos, Nicholson, and others executed a Workout Memorandum of Understanding ("**MOU**"), attached hereto as **Exhibit 3**, which, *inter alia*, included a $15,000,000 credit minimum if Properties did not further oppose the foreclosure on its property.

l)  On September 14, 2016, pursuant to an order of this Court, the U.S. Marshal conducted the foreclosure sale by auction of Properties' property on Port Road in Iberia Parish, Louisiana.

m)  On February 1, 2017, the U.S. Marshal conducted the foreclosure sale by auction of the Nicholson Estates Property in Baton Rouge, Louisiana.

n)  On March 20, 2017, Goldman filed an *Amended Demand for Arbitration*, attached hereto as **Exhibit 4**, in which it added Properties and specified trusts as respondents in the Arbitration Proceeding.  As part of the arbitration, Goldman now seeks to recover a <u>deficiency</u> as to Properties and the Morenos.

**The Relevant Loan Documents.**

7.      In its Complaint of July 8, 2015, Goldman claimed that it was the holder and owner of a Consolidated, Amended and Restated Note (the "Note") [Doc. 1-3, Ex. 1], dated October 11, 2013 and that Properties and the other makers of the Note, the Morenos and the Trusts[2], were in payment default.

8.      In its Complaint, Goldman also alleged it was entitled to enforce the terms of an *Amended and Restated Loan Agreement* dated October 11, 2013 (the "**Consolidated Loan Agreement**") [Doc. 1-4, Ex. 2], amended and modified pursuant to that *First Amendment to Amended and Restated Loan Agreement* dated June 30, 2014 (the "**2014 Loan Amendment**") [Doc. 1-5, Ex. 3]; and that the Note, the Consolidated Loan Agreement, and the 2014 Loan Amendment were secured by, *inter alia*, immoveable property of Properties located on Port Road in Iberia Parish, Louisiana as evidenced by a *Multiple Indebtedness Mortgage, Collateral Assignment of Leases and Rents, and Security Agreement* dated September 10, 2010 ("**MIM**") [Doc. 1-10, Ex. 7] in favor of Regions Bank, subsequently assigned to Goldman and then modified pursuant to a *Mortgage Modification to Multiple Indebtedness Mortgage, Collateral*

---

[2] Terms not otherwise defined have the same meaning as used in Goldman's Complaint.

*Assignment of Leases and Rents, and Security Agreement* ("**Modification**") [Doc. 1-12, Parts 1 and 2] executed October 11, 2013.

      9.     Goldman prayed for the issuance of an Order of Executory Process and the issuance of a writ of seizure and sale directing the U.S. Marshall for the Western District of Louisiana to sell at public auction, with benefit of appraisement, the Port Road Property.

      10.    Goldman prayed for the issuance of an Order of Executory Process and the issuance of a writ of seizure and sale directing the U.S. Marshall for the Western District of Louisiana to sell at public auction, with benefit of appraisement, the Nicholson Estates Property.

      11.    In paragraph 45 of the Complaint, Goldman stated that it "reserves its right to collect **any deficiency** against the Borrowers and any co-maker or guarantor of the Note should the proceeds of any judicial sale be insufficient to satisfy the amounts due and owing under the Note in full."

      12.    The Consolidated Loan Agreement contains an **arbitration clause**. Subsection (a) of the arbitration clause read as follows:

**8.9 Binding Arbitration**

      (a)    THE PARTIES HERETO HEREBY WAIVE ALL RIGHTS TO A COURT TRIAL OR TRIAL BY JURY WITH RESPECT TO ANY DISPUTE, CONTROVERSY OR CLAIM UNDER THIS AGREEMENT AND THE BORROWERS AGREE TO SETTLE BY ARBITRATION ANY CONTROVERSY BETWEEN THE BORROWERS AND THE LENDER AND ITS AFFILIATES ARISING OUT OF OR RELATING TO THIS AGREEMENT. THE ARBITRATION WILL BE CONDUCTED IN ACCORDANCE WITH THE RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION. ANY DISPUTE OR CLAIM INVOLVING A DOLLAR AMOUNT OF $50,000 OR LESS WILL BE BEFORE ONE ARBITRATOR, AND ALL OTHER DISPUTES AND CLAIMS WILL BE BEFORE A PANEL OF AT LEAST THREE ARBITRATORS. THE AWARD OF THE ARBITRATOR OR A MAJORITY OF THE ARBITRATORS, AS THE CASE MAY BE THE FINAL, AND JUDGMENT UPON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.

Additionally, Exhibit A, Modified Mortgage Terms to the Modification [Doc. 1-12, Ex. 9, pt. 1] contains an arbitration clause that reads as follows:

**7.16 Binding Arbitration**. Mortgagor agrees to settle all claims relating to this Mortgage by arbitration and agrees to be bound by the terms of the Section 8.9 of the [Consolidated] Loan Agreement which is hereby incorporated by reference.

13.     The same language is contained in Sections 7.16 of both the *Second Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement* [Doc. 16, Ex. 12] and the *Third Lien Mortgage, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Material Agreements and Security Agreement* [Doc. 19, Ex. 14].

14.     On July 22, 2015, Properties and Nicholson, filed their Answer and Counterclaims.

15.     In their Answer and Counterclaims, Properties and Nicholson specifically pled that they were entitled to arbitration of the claims brought by Goldman:

THIRD AFFIRMATIVE DEFENSE

3.     **Mandatory Arbitration.**  The Loan Agreement, Promissory Note, Acts of Mortgage, and other documents attached as Exhibits to the Complaint evidence that the parties have stipulated to mandatory arbitration with respect to any dispute, controversy, or claim.  See, e.g., Section 8.9 of Loan agreement attached as Exhibit 2 to the Complaint, sixth paragraph of the Promissory Note attached as Exhibit 1 to the Complaint, Section 7.16 of Act of Mortgage attached to the Complaint as Exhibit 4, Section 7.16 of Iberia Mortgage attached to the Complaint as Exhibit 9, Section 7.16 of Port Road Second Mortgage attached to the Complaint as Exhibit 12, and Section 7.16 of the Third Lien Mortgage attached to the Complaint as Exhibit 14.

16.     On September 18, 2015, Properties and Nicholson filed their Motion to Compel, again specifically pleading, at p. 7, that they were entitled to arbitration:

The Loan Agreement and the Mortgages specifically provide that all disputes of Plaintiff and Defendants arising under the Loan Agreement or the Mortgages be

resolved by arbitration. Parties who agree to arbitration have validly selected an alternative forum, other than a court, to resolve their claims.

17.     In the Motion to Compel, Properties and Nicholson again references the specific provisions of Section 8.9 of the Loan Agreement and Section 7.16 of the Modification, both of which provide for mandatory arbitration before the AAA.  Properties also cited the applicable case law holding that arbitration is preferred and enforceable.

18.     Also in the Motion to Compel, at p. 13, Properties and Nicholson requested ". . . the entry of an order staying all proceedings herein pending resolution of the claims through arbitration."

19.     On October 9, 2015, Goldman filed its Opposition.  In the opposition, at 9, Goldman stated:

> With these principles in mind, **the Arbitration Clause does not apply to the facts before the Court** because it must be read in tandem with the other provisions of the Loan Documents.  In particular, the Loan Documents, when read together, trigger a separate procedural mechanism whereby, after an Event of Default, Goldman Sachs may elect its remedies, including exercising its judicial remedies in an executory proceeding. **The Arbitration Clause, however, does not apply after an Event of Default.** (All emphasis supplied.)

20.     Thereafter, on May 24, 2016, the Court issued its Memorandum Ruling, denying Properties demand for arbitration.  The Court found, beginning at p. 11 of the Memorandum Ruling:

> **Further, the Court finds under the principles of contract interpretation, arbitration of this matter is not required.** (Emphasis supplied.)

The Court continued, at 11:

> While the loan agreement states the parties agree to settle by arbitration "any dispute, controversy or claim under this agreement," it additionally states, "upon occurrence and during the continuance of an Event of Default," Goldman Sachs

may proceed to "protect and enforce [its] rights by suit in equity, action of law and/or other appropriate proceeding either for specific performance of any covenant or condition contained in this Agreement, [or] any other Loan Document." This language is broad enough to encompass a proceeding for executory process. It is well-settled in the interpretation of contracts, the specific controls the general, and therefore the enforcement provisions identified as available after an event of default control in this matter.' Thus, after an event of default, under this contractual language, Goldman Sachs is not *limited to* an arbitration suit; rather, it may proceed by filing a suit in equity, an action of law, or any *"other appropriate proceeding"* to enforce the agreement.

21.     On the basis of the Court's ruling, Goldman elected to proceed with the litigation, rather than arbitrate its claims under the Note and MIM, and went forward with the seizure and sale of Properties' immoveable property on Port Road.

22.     On September 15, 2015, the U.S. District Court entered an order directing the U.S. Marshal's Service to seize and sell both the Port Road Property and the Nicholson Estates Property in partial satisfaction of the amounts due and owing to Goldman Sachs under the Loan, in accordance with the Louisiana Mortgages and executory process laws of the State of Louisiana (the "**Seizure and Sale Order**").

23.     On September 14, 2016 the U.S. Marshal conducted an auction sale of the Port Road Property with appraisement (the "**Marshal's Sale**"), at which sale Goldman bid $8,406,666.67, being two-thirds (2/3) of the $12,610,000.00 agreed appraised value of the Port Road property and the highest bid for the property.

24.     Following the foreclosure on the Port Road Property, Goldman Sachs took no further steps in this Court to move for entry of a deficiency judgment against the Morenos.

25.     While this matter was pending, including the pendency of the seizure and sale under executory process and six (6) months prior to the Marshal's Sale of the Port Road Property, on April 21, 2016, Goldman filed its Arbitration Demand with the AAA in Dallas, naming the Morenos as respondents.

26.     Both of the Morenos had been named as defendants nine (9) months earlier in the

Complaint filed in this matter on July 8, 2015. However, the Morenos were never served with the

Complaint.

27.     Although:

(a)     The matters made subject to the Arbitration Proceeding by Goldman included: (i) the Note (¶ 10 of the Arbitration Demand) and (ii) the Consolidated Loan Agreement (¶ 11 of the Arbitration);
(b)     Properties and the Trusts appear as co-borrowers under the Note;
(c)     The Trusts executed the Consolidated Loan Agreement;
(d)     The MIM and Modification show the Port Road property as security for the loan evidenced by the Note; and,
(e)     Properties and the Trusts were named as defendants in the Complaint filed in this matter,

Goldman did not include either Properties or the Trusts as original respondents in the Arbitration

Proceeding.

28.     In the Arbitration Demand, Goldman alleged, *inter alia*, default under the Note

and breach of loan documents, including the Consolidated Loan Agreement.  The demands for

relief included payment of principal and interest alleged to be due under the Note:

57. Goldman Sachs is the legal holder of the Note, which the Respondents knowingly and willingly executed.

58. An outstanding balance is due and owing on the Note in the amounts set forth above. Interest continues to accrue on that balance at the Default Rate.

29.     The Arbitration Demand was based upon the terms of the Consolidated Loan

Agreement, as Goldman alleged in the Arbitration Demand at paragraphs 31 and 32 thereof, as

follows:

31. The Consolidated Loan Agreement contains a binding arbitration provision. *See* Exh. D § 8.9(a), which states as follows:

THE PARTIES HERETO HEREBY WAIVE ALL RIGHTS TO A COURT TRIAL OR TRIAL BY JURY WITH RESPECT TO ANY DISPUTE, CONTROVERSY OR CLAIM UNDER THIS AGREEMENT AND THE BORROWERS AGREE TO SETTLE BY ARBITRATION ANY

CONTROVERSY BETWEEN THE BORROWERS AND THE LENDER OR ITS AFFILIATES ARISING OUT OF OR RELATING TO THIS AGREEMENT. THE ARBITRATION WILL BE CONDUCTED IN ACCORDANCE WITH THE RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION. ANY DISPUTE OR CLAIM INVOLVING A DOLLAR AMOUNT OF $50,000 OR LESS WILL BE BEFORE ONE ARBITRATOR, AND ALL OTHER DISPUTES AND CLAIMS WILL BE BEFORE A PANEL OF AT LEAST THREE ARBITRATORS. THE AWARD OF THE ARBITRATOR OR A MAJORITY OF THE ARBITRATORS, AS THE CASE MAY BE, WILL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.

32. Pursuant to this provision, Goldman Sachs files this arbitration on April 21, 2016 before the AAA. That Arbitration remains pending as of the present time[.]

**Goldman's Dallas County Lawsuit, Including Arbitration Demand.**

30.    Also on April 21, 2016, Goldman filed a lawsuit in Texas State District Court in Dallas County naming the Morenos as defendants and seeking, *inter alia*, payment of principal and interest under the Note, injunctive relief as to the Morenos regarding their Dallas residence, attachment of their Dallas residence, and **arbitration**.  Exhibit 2 hereto.

31.    In its Petition filed in the Dallas Lawsuit, Goldman claimed that Michael B. Moreno and Tiffany C. Moreno were in default under the Note.  The Note was specifically referenced in the Petition:

23. On October 11, 2013, Goldman Sachs, Defendants, and five additional entities[3] (the "Other Borrowers") executed a Consolidated, Amended and Restated Note in favor of Goldman Sachs (the "Note") in the original amount of $52,370,000.00 (the "Principal Balance").

The five additional "Other Borrowers" named in footnote 3 are: "MBM-DOH Trust, MBM-MGH Trust, TCM-MGH Trust, TCM-DOH Trust, and Moreno Properties Two, L.L.C."

32.    At Paragraph 24 of the Petition, Goldman referenced the Consolidated Loan Agreement:

24. The Note provides that it is issued pursuant to, and is entitled to the benefits of, an Amended and Restated Loan Agreement, dated October 11, 2013 (the

"Consolidated Loan Agreement"), which consolidated, amended, and restated certain previous loan agreements between Goldman Sachs, the Defendants, and the Other Borrowers, including the May 15 Loan Agreement and the July 5 Loan Agreement.

33.    In the Petition, Goldman again demanded arbitration pursuant to the terms of the

Consolidated Loan Agreement. Ex. 2 at ¶ 44.

**Goldman's Amended Arbitration Demand.**

34.    On March 20, 2017, six (6) months after the Marshal's Sale, Goldman filed its

Amended Demand for Arbitration in which it named Properties and the Trusts as additional

respondents.

35.    Properties filed an opposition with the AAA opposing the addition of Properties.

36.    In addition to re-alleging defaults under the terms of the Note, the Consolidated

Agreement, and Other Loan Documents regarding the Morenos, Goldman added allegations

regarding the Trusts, Properties, and Nicholson, including the Port Road Property that had been

previously sold at the September 14, 2016 Marshal's Sale. *See* Ex. 4 at ¶¶ 23-24.

37.    The Amended Demand for Arbitration also incorporates claims relating to the

Port Road Property foreclosure, purportedly by executory process in this proceeding, as follows:

### G. The Louisiana Foreclosure Litigation

41. On July 8, 2015, Goldman Sachs commenced an *ex parte, in rem* proceeding by filing its Verified Complaint for Executory Process with the Benefit of Appraisal (the "**Louisiana Foreclosure**") in the U.S. District Court for the Western District of Louisiana (**the U.S. District Court**")5 to foreclose on both the Port Road Property and the Nicholson Estates Property.

42. On September 15, 2015, the U.S. District Court entered an order directing the U.S. Marshal's Service to seize and sell both the Port Road Property and the Nicholson Estates Property in partial satisfaction of the amounts due and owing to Goldman Sachs under the Loan, in accordance with the Louisiana Mortgages and executory process laws of the State of Louisiana (the "**Seizure and Sale Order**").

43. Pursuant to the Seizure and Sale Order, the Port Road Property and the Nicholson Estates Property were seized, and, after due advertisements, delays and

requisite formalities, offered for sale at judicial sale, with the benefit of appraisal, to the highest bidder.

44. On September 14, 2016, Goldman Sachs was the highest bidder on the Port Road Property at the judicial sale conducted by the U.S. Marshal for the U.S. District Court for the Western District of Louisiana. Goldman Sachs bid $8,406,666.67, an amount that equals or exceeds two-thirds of the appraised value of the Port Road Property, pursuant to Louisiana law.

…

47. The foreclosure sale bids have been credited and as of February 21, 2017, and the amounts described in ¶ 28 above remain due and owing. Accordingly, Goldman Sachs is entitled to a **deficiency judgment** for that amount. (Emphasis supplied.)

Exhibit 4 at ¶¶ 41-44, 47.

38.     Thus, in addition to pleading for a deficiency in the proceeding before this Court, Goldman is also seeking damages related to an alleged deficiency in the Arbitration Proceeding.

**Deficiency Sought in this Litigation and the Arbitration Proceeding.**

39.     As it stated in Paragraph 45 of the Complaint filed by Goldman in this matter, Goldman is seeking to collect through this litigation on an alleged deficiency claim subsequent to the Marshal's Sale of Properties' property on Port Road.

40.     With this matter pending, as stated in Paragraph 47 of the Amended Demand for Arbitration, Goldman is also seeking to collect pursuant to the Arbitration Proceeding on the same alleged deficiency claim subsequent to the foreclosure proceeding and Marshal's Sale of Properties' property on Port Road.

**Memorandum of Understanding and $15,000,000 Credit.**

41.     Effective July 6, 2016, approximately one year after Goldman filed the Complaint in this matter, Properties, together with the Morenos, Nicholson, the Trusts, and Powermeister LP (which held a second mortgage on the Port Road property) executed the MOU with regard to the property of Properties and Nicholson which were collateral for the loans. Exhibit 3.

42.     The terms of the MOU included provisions for forbearance from foreclosure upon the Port Road property, terms for a reduced loan payment by Properties and/or restructuring of the loans.

43.     Particularly, Section 2 of the MOU provided that Goldman would continue the foreclosure on the Port Road Property (pending before this Court) and that Goldman would provide a $15,000,000 credit minimum upon conclusion of the foreclosure of the Port Road property provided that Properties and the other parties to the agreement did not interfere with or attempt to stop the foreclosure sale.

44.     At Section 8, the MOU provides that it shall be governed by New York law and may be enforced in the state and federal courts in Dallas County, Texas.  The MOU did not have an arbitration provision.

45.     Properties complied with the terms of the MOU and did not interfere with or make any further attempts to stop the foreclosure sale.

46.     The Morenos assisted Goldman in obtaining the cancellation of the recording lease in favor of the third-party, Dynamic Industries, Inc., in order to clear title as to the Port Road Property and facilitate the foreclosure sale which occurred on September 14, 2016.

47.     Therefore, the Morenos are entitled to the $15,000,000 credit.

**The Nicholson Estates Property Foreclosure.**

48.     A Notice of Sale and Appointment of Appraisers related to the Nicholson Estates Property ("Notice") was received by Moreno's counsel on January 10, 2017.

49.     The Notice directed the parties to name an appraiser to value the Nicholson Estates Property and notify the Marshal's office at least twenty (20) days, exclusive of holidays, prior to the time of sale.

50.     The Notice also directed that appraisals were to be delivered no later than fourteen (14) days (exclusive of holidays) prior to the scheduled sale.

51.     Nicholson Estates submitted an appraisal on or before the deadline specified in the Notice.

52.     On information and belief, Goldman also submitted an appraisal.

53.     The appraisers were unable to confer in order to agree on a value.

54.     On information and belief, the Goldman appraisal did not appraise the seized property with such minuteness that it could be sold together or separately.

55.     The Foreclosure sale was set for Feb. 1, 2017.

56.     The Foreclosure occurred on Feb. 1, 2017.

57.     During the sale, there was no opportunity for any bidder to bid on any individual lot.

58.     Only two sale offerings were made; one for a group of 31 properties for an opening bid of $13,770,733 and then in globo for all 51 properties with an opening bid of $20,275,333. On information and belief, this amount is 2/3 of the appraised value of the property in the appraisal submitted by Goldman.

59.     Goldman bid "$20 million whatever" at the February 1, 2017 sale.

60.     There were no other bids made at the Nicholson Estates Property foreclosure sale.

61.     Following the February 1, 2017 foreclosure sale, Goldman Sachs did not move this court for an entry of a deficiency judgment.

62.     On information and belief, the Nicholson Estates Property foreclosure sale has been consummated by the delivery of the proper deed of conveyance to the purchaser.

63.     On information and belief, such delivery occurred more than ninety (90) days prior to the filing of this Counterclaim.

64.     Although purportedly conducting an executory process by foreclosing on the Nicholson Estates Property, Goldman Sachs took no further steps in this Court to seek entry of a judgment for deficiency against the Morenos as would ordinarily be done at the end of an executory process.

**Choice of Law – New York Law and Limitations on Deficiency.**

65.     While the mortgages provide for the application of Louisiana law is to the mortgage documents, the Note, the Consolidated Loan Agreement, the 2014 Loan Amendment, and the Modification all provide that all rights and obligations shall be governed by the laws of the state of New York (without giving effect to principles of conflicts or choice of laws).  More particularly, the Note provides as follows:

> All rights and obligations hereunder shall be governed by the laws of the state of New York . . .

66.     The MIM provides, at Section 5.11, that the mortgage and all matters relating or pertaining to the mortgage shall be governed by and construed in accordance with the laws of the state of Louisiana without regard to conflict rules.  Exhibit B to the Modification provided that the Louisiana remedies were "In addition to and not in lieu or limitation" of other remedies in the MIM.

67.     The Modification provides:

> 8. **Governing Law**.  THE PROVISIONS OF THIS AGREEMENT REGARDING THE CREATION, PROTECTION AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS HEREIN GRANTED SHALL BE GOVERNED AND CONSTRUED UNDER THE LAWS OF THE STATE IN WHICH THE MORTGAGE PROPERTY IS LOCATED. **ALL OF THE PROVISIONS OF THIS SUPPLEMENT AND THE RIGHTS AND OBLIGATIONS OF THE MORTGAGOR AND LENDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW**

**YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.** (Bold type emphasis added.)

68.     New York law is thus applicable to any claims for deficiencies and under New York law.

69.     Considering the facts and circumstances of this case and the application of New York law, no deficiency is due by the Morenos under the Note or any other loan document.

70.     The Morenos respectfully reserve the right to further supplement their counterclaims and other defenses regarding deficiency and limitations on deficiencies under New York law.

### COUNTERCLAIMS

COUNT ONE
**(For Injunctive Relief)**

71.     The Morenos incorporate by reference, as if fully rewritten herein, all of the preceding paragraphs of this Counterclaim.

72.     Immediate and speedy relief is necessary to preserve the Morenos' rights and prevent irreparable harm to the Morenos by having to defend proceedings (this litigation and the Arbitration Proceeding) in two states and, as a result of the foreclosure and other issues, will also be compelled to actively participate in the Dallas Lawsuit.

73.     The claim pursued by Goldman in the Arbitration Proceeding assumes and is based on the assumption that Goldman has or is entitled to a deficiency judgment following the foreclosures and related deficiency issues arising under the Note and Loan Documents in multiple jurisdictions and inconsistent with the pendency of this lawsuit.

74.     Even if the Morenos agreed that the AAA panel could adjudicate the deficiency issues, which they do not agree to, the AAA panel has indicated it will not hear or decide matters regarding the foreclosure process.

75.     A determination of the deficiency issues and whether Goldman is entitled to a deficiency judgment is integral to a determination of whether Goldman Sachs may recover on its claims that are based on an alleged deficiency against the Morenos.

## COUNT TWO
### (For Declaratory Relief)

76.     The Morenos incorporate by reference, as if fully rewritten herein, all of the preceding paragraphs of this Counterclaim.

77.     As required by 28 U.S.C. §§ 2201 and 2202, an actual and justiciable controversy presently exists between the Morenos and Goldman Sachs regarding each parties' rights and responsibilities under the Note, the Consolidated Loan Agreement, the 2014 Loan Amendment, the MIM, the Modification, and other related loan documents.

78.     An actual and justiciable controversy also presently exists between the Morenos and Goldman Sachs as to whether Goldman Sachs has any right to recover any deficiency.

79.     The Morenos are entitled to have this Court determine all questions of their rights and obligations under the Note, the Consolidated Loan Agreement, the 2014 Loan Amendment, the MIM, the Modification, and other related loan documents.

80.     The Morenos are entitled to a declaratory judgment that no deficiency is due under the Note and related documents.

81.     The Morenos are entitled to a declaratory judgment that Goldman Sachs has no right to recover any deficiency in any action pursuant to NY RPA Law 1371 Deficiency Judgment (Laws of New York (2016 Edition)) and other applicable law.

82.     Alternatively, the Morenos are entitled to a determination of any balance due, including any balance due after application of the $15,000,000 credit minimum on the Port Road

Property and a credit of not less than fair market value or approximately $30 million on the Nicholson Estates Property.

83.     The Morenos are entitled to a declaratory judgment that Goldman is not entitled to arbitrate any claims against the Morenos with regard to any deficiency under the Note and Loan Documents and that any proceedings relating to the Note can only be brought before this Court.

COUNT THREE
**(Lis Pendens)**

84.     The Morenos incorporate by reference, as if fully rewritten herein, all of the preceding paragraphs of this Counterclaim.

85.     For the foregoing reasons, including the pendency of this litigation which was commenced prior to the Arbitration Proceeding, the doctrine of *lis pendens* is applicable.

86.     Particularly, *lis pendens* is applicable as Goldman seeks to recover an alleged deficiency against Properties in both this litigation and in the Arbitration Proceeding.

87.     In this litigation, after the sale of the property, under La. Civil Code Article 2772, the next step in obtaining a deficiency would be for Goldman to convert this proceeding to an ordinary proceeding.

88.     Alternatively, Goldman could commence a separate suit that would be consolidated with this proceeding.

89.     With this lawsuit pending and the ability of Goldman to continue with this litigation and obtain a deficiency judgment, Goldman should not be permitted to continue with the Arbitration Proceeding in which it also seeks a deficiency.

90.     As Goldman initially elected to litigate against Properties in this Court and this case is still pending, the doctrine of *lis pendens* is applicable and the arbitration proceeding

should be stayed pursuant to both Louisiana law and under New York CVP Law 7503(a), Application to compel or stay arbitration; stay of action; notice of intention to arbitrate. Otherwise, Goldman could go forward in both forums, then select the highest award between the two forums, a clearly unjust and inequitable result.

**WHEREFORE**, Moreno requests that this Court enter judgment in their favor against Goldman Sachs Bank USA as follows:

(1)     An order enjoining Goldman from proceeding with the Arbitration Proceeding and from initiating any additional proceedings against Moreno in any forum other than this Court seeking payment of any amounts claimed due under the Note for any of the Loan Documents;

(2)     An order declaring that Goldman is not entitled to any deficiency against Michel or Tiffany Moreno or any other borrower;

(3)     An order declaring that Goldman is not entitled to arbitrate any claims against Moreno with regard to the Note and Loan Documents and that first any proceedings relating to the Note must be brought before this Court;

(4)     Any other order or relief that this Court deems appropriate including, but not limited to, reasonable attorney's fees and costs related to this litigation, and for such other and further relief to which Tiffany and Michel Moreno may be entitled.

Dated: January 31, 2018        Respectfully submitted by:

<u>/s/ Richard J. Hymel</u>
Richard J. Hymel
LA State Bar No. 20230
MAHTOOK & LAFLEUR, L.L.C.
1000 Chase Tower, 600 Jefferson Street
Post Office Box 3089
Lafayette, LA 70502
Phone No. (337) 266-2189
Fax No. (337) 266-2303

And

Jeffrey R. Fine (*pro hac vice application will be submitted*)
Texas State Bar No. 07008410
Alison R. Ashmore (*pro hac vice application will be submitted*)
Texas State Bar No. 24059400
**DYKEMA**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Tel: (214) 462-6400
Fax: (866) 781-2975

**Counsel for Tiffany and Michel Moreno**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing *MICHEL AND TIFFANY MORENO'S INITIAL APPEARANCE, ANSWER, AND COUNTERCLAIM* has been served upon Plaintiff, Goldman Sachs Bank USA, through its attorneys of record *via* the Court's CM/ECF by electronic (email) transmission to:

Patrick Vance, pvance@joneswalker.com;
Laura F. Ashley, lashley@joneswalker.com; and,
Carmen M. Rodriguez, carmenrodriguez@joneswalker.com.

And upon Moreno Properties Two LLC and Nicholson Estates LLC, through their attorney of record via the Court's CM/ECF by electronic (email) transmission to:

William E. Steffes, bsteffes@steffeslaw.com

And upon TCM 2011 DOH Grantor Retained Annuity Trust, MBM 2011 DOH Grantor Retained Annuity Trust, TCM 2011 MGH Grantor Retained Annuity Trust, and MBM 2011 MGH Grantor Retained Annuity Trust by depositing a copy of same in the U.S. Mail, postage prepaid on February 1, 2018, and properly addressed to:

TCM 2011 DOH Grantor Retained Annuity Trust
MBM 2011 DOH Grantor Retained Annuity Trust
TCM 2011 MGH Grantor Retained Annuity Trust
MBM 2011 MGH Grantor Retained Annuity Trust
c/o Dalis Moreno Waguespack
200 Brahmwell Court
Lafayette, LA 70508

Lafayette, Louisiana, January 31, 2018.

/s/ Richard J. Hymel
Richard J. Hymel